Joseph Henry CORT, Plaintiff,

v.

Christian A. HERTER, Secretary of State, Defendant.

Civ. A. No. 868–60.

United States District Court
District of Columbia.

Oct. 11, 1960.

Leonard B. Boudin, New York City, and David Rein, Washington, D. C., for plaintiff.

Oliver Gasch, U. S. Atty., Edward P. Troxell, Principal Asst. U. S. Atty., John F. Doyle and Harold D. Rhynedance, Jr., Asst. U. S. Attys., Washington, D. C., for defendant.

Before EDGERTON, Circuit Judge, and TAMM and MATTHEWS, District Judges.

MATTHEWS, District Judge.

The plaintiff, a citizen of the United States by birth, has been declared to have lost his American citizenship by reason of remaining outside the United States for the purpose of avoiding training and service in the armed forces of this country. He has been refused a passport on which to return from abroad. He denies the purpose attributed to him and also challenges the validity of the law under which his loss of citizenship was declared. This law, Section 349(a) (10) of the Immigration and Nationality Act of 1952, 66 Stat. 163, 267–268, 8 U.S. C.A. § 1481(a) (10),[1] provides:

"(a) * * * a person who is a national of the United States whether by birth or naturalization, shall lose his nationality by—

\*    \*    \*    \*    \*    \*

"(10) departing from or remaining outside of the jurisdiction of the United States in time of war or dur-

ing a period declared by the President to be a period of national emergency for the purpose of evading or avoiding training and service in the military, air, or naval forces of the United States. For the purposes of this paragraph failure to comply with any provision of any compulsory service laws of the United States shall raise the presumption that the departure from or absence from the United States was for the purpose of evading or avoiding training and service in the military, air, or naval forces of the United States."

The plaintiff was born in Boston, Massachusetts, on December 27, 1927. He is a physician and research physiologist. In May 1951, he departed from the United States for temporary work in England. His draft board in Brookline, Massachusetts, ordered him to report in September 1953 for induction into the armed forces of the United States but he did not appear and thereafter was indicted on the charge of having failed to comply with the order. At the instance of the United States the British Government refused to renew the plaintiff's residence permit. Instead of returning to the United States he traveled to Czechoslovakia where he was and is employed. In 1959 he applied for a United States passport to enable him to return to this country. The Passport Office of the Department of State made an administrative decision that the plaintiff had expatriated himself by remaining outside the United States for the purpose of avoiding service in the armed forces and refused him a passport. Early in 1960 the Department's Board of Review on the Loss of Nationality affirmed the decision of the Passport Office.

Shortly thereafter plaintiff brought this suit for a judgment declaring him to be a citizen of the United States. He seeks an interlocutory and permanent injunction to restrain the enforcement and

<hr>

1. Section 401 of the Nationality Act of 1940, 54 Stat. 1168, was amended in 1944 by adding a subsection (j), 58 Stat.

746. Section 401(j) was reenacted in the Immigration and Nationality Act of 1952 in Section 349(a) (10).

execution of the challenged provision of law. He contends that Congress is without power to attach loss of citizenship as a consequence of avoiding service in the armed forces by remaining abroad. He also argues that such an exercise of power would violate the Due Process Clause of the Fifth Amendment to the United States Constitution as well as the prohibition against cruel and unusual punishments in the Eighth Amendment. On the plaintiff's application this three-judge statutory court has been convened to hear and determine the case.[2]

A motion for summary judgment has been filed by the plaintiff and also by the Government. In addition the Government has moved to dismiss the action, asserting that the plaintiff has failed to pursue his exclusive remedy for obtaining a review of his citizenship status. This exclusive remedy, according to defendant, is provided by Section 360(b) and (c) of the Immigration and Nationality Act of 1952, 66 Stat. 163, 273–274, 8 U.S.C.A. § 1503(b) and (c).

■ We will first give consideration to the ground advanced in support of the motion to dismiss. It is provided in subdivision (b) of Section 360 that any person who is not within the United States and who is denied a right or privilege upon the ground that he is not a national of the United States may make application to a diplomatic or consular officer for a certificate of identity for the purpose of traveling to a port of entry in the United States and applying for admission. Subdivision (c) of that section provides that if such person is granted and in possession of a certificate of identity he may then apply for admission to the United States at any port of entry, and if it is finally determined by the Attorney General that such person is not

entitled to admission then such determination is subject to review by any court of competent jurisdiction "in habeas corpus proceedings and not otherwise."

Section 360 may well be thought to provide an exclusive remedy for a person outside of the United States who has sought and obtained a certificate of identity and who has applied for admission to the United States at a port of entry. But we need not determine that question. The language of the section shows no intention to provide an exclusive remedy, or any remedy, for persons outside the United States who have not adopted the procedures outlined in subsections (b) and (c). Neither does the section indicate that such persons are to be denied existing remedies. The legislative history of the section does not require such a construction. Cf. Frank v. Rogers, 102 U.S.App.D.C. 367, 253 F.2d 889; Tom Mung Ngow v. Dulles, D.C.D.C., 122 F. Supp. 709. Subsections (b) and (c) were designed to regulate, not to require, the use of certificates of identity.

■ While the plaintiff might have applied for a certificate of identity for the purpose of following the procedure set forth in Section 360, there is nothing in this case to indicate that he ever did or that such a certificate has been issued to him. Instead, he has chosen to bring this action under the Declaratory Judgments Act for a judgment declaring him to be a United States citizen.

We hold that the complaint in this case presents a controversy to which the judicial power extends under the Constitution, and that authority to hear and determine it has been conferred upon the District Court by the Declaratory Judgments Act and the Administrative Procedure Act.[3] Aetna Life Ins. Co. of

**2.** 28 U.S.C. § 2282 provides:

"An interlocutory or permanent injunction restraining the enforcement, operation or execution of any Act of Congress for repugnance to the Constitution of the United States shall not be granted by any district court or judge thereof unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title."

**3.** Declaratory Judgments Act of June 14, 1934, 48 Stat. 955, as amended, 28 U.S.C. § 2201; Administrative Procedure Act of June 11, 1946, 60 Stat. 237, as amended, 5 U.S.C.A. § 1001 et seq.

Hartford, Conn. v. Haworth, 300 U.S. 227, 239–241, 244, 57 S.Ct. 461, 81 L.Ed. 617; Perkins v. Elg, 69 App.D.C. 175, 99 F.2d 408, affirmed 307 U.S. 325, 59 S.Ct. 884, 83 L.Ed. 1320; Tom Mung Ngow v. Dulles, supra; Frank v. Rogers, supra. The motion to dismiss is denied.

■ When, as here, a citizenship claimant establishes his birth in the United States the burden is upon the Government to prove by clear, convincing and unequivocal evidence the act it relies upon to show expatriation. Nishikawa v. Dulles, 356 U.S. 129, 133, 78 S.Ct. 612, 2 L.Ed.2d 659. We think the Government has met this burden. In 1951 when the plaintiff went abroad it was for a limited period. On December 29, 1952, he accepted a position at the Harvard Medical School to begin the latter part of 1953, and indicated that he had made arrangements for prior transportation to the United States. His intention to return to this country was steadfast until he learned shortly after January 31, 1953, that the school authorities felt that they could not declare him "essential" for teaching, and that he probably would be drafted. He wrote them on February 10, 1953, that until he heard "something definite" from the draft board he was "reluctant to take a decision that may prove to be foolish or premature." On February 9, June 4, and July 3 in 1953 the draft board sent him notices to report for physical examination, and thereafter ordered him to report for induction on September 14, 1953. The plaintiff made no response or compliance but remained abroad. We are convinced that his purpose was to avoid service in the armed forces.

■ The only question left in this case is the constitutionality of the law under which the Government maintains that the plaintiff was divested of his citizenship.

At the threshold of this issue we are faced with the decision of the Supreme Court in Trop v. Dulles, 356 U.S. 86, 78 S.Ct. 590, 2 L.Ed.2d 630. There Trop, the plaintiff, had been a private in the United States Army, serving in French Morocco. A general court-martial had convicted him of desertion and sentenced him to three years at hard labor, forfeiture of all pay and allowances and a dishonorable discharge. Some years after his return to the United States he applied for a passport. It was denied on the ground that by reason of his conviction and dishonorable discharge for wartime desertion he had lost his citizenship under the provisions of Section 401(g) of the Nationality Act of 1940, as amended.[4] Trop sued for a judgment declaring him to be a citizen. The issue was whether his expatriation for desertion in war time comported with the Constitution. The Government's motion for summary judgment was granted and the Court of Appeals for the Second Circuit affirmed. But the Supreme Court reversed, holding Section 401(g) unconstitutional, Mr. Justice Frankfurter, Mr. Justice Burton, Mr. Justice Clark and Mr. Justice Harlan dissenting.

The concept of the Chief Justice's opinion in Trop, in which three of his

4. 54 Stat. 1168, 1169, as amended, 58 Stat. 4, 8 U.S.C.A. § 1481(a) (8):

"A person who is a national of the United States, whether by birth or naturalization, shall lose his nationality by:

*	*	*	*	*

"(g) Deserting the military or naval forces of the United States in time of war, provided he is convicted thereof by court martial and as the result of such conviction is dismissed or dishonorably discharged from the service of such military or naval forces: *Provided*, That notwithstanding loss of nationality or citizenship or civil or political rights under the terms of this or previous Acts by reason of desertion committed in time of war, restoration to active duty with such military or naval forces in time of war or the reenlistment or induction of such a person in time of war with permission of competent military or naval authority, prior or subsequent to the effective date of this Act, shall be deemed to have the immediate effect of restoring such nationality or citizenship and all civil and political rights heretofore or hereafter so lost and of removing all civil and political disabilities resulting therefrom * * *."

colleagues concurred, is that the purpose of Section 401(g) is "punishment" of a convicted deserter and hence, that "the statute is a penal law", 356 U.S. at page 97, 78 S.Ct. at page 596, and that even if "it is assumed that the power of Congress extends to divestment of citizenship" the use of such divestment as punishment is barred by the Eighth Amendment's prohibition against cruel and unusual punishment. 356 U.S. at pages 99, 101, 78 S.Ct. at pages 597, 598. A fifth member of the Court, Mr. Justice Brennan, agreed that Section 401(g) is beyond the power of Congress, but on the ground that "the requisite rational relation between this statute and the war power does not appear * * *." 356 U.S. at page 114, 78 S.Ct. at page 605. The rationale of the dissenting opinion in Trop is that "Congress was calling upon its war powers when it made such desertion an act of expatriation", 356 U.S. at page 121, 78 S.Ct. at page 609, that expatriation under the Nationality Act is not "punishment" in any valid constitutional sense, that "because denationalization was attached by Congress as a consequence of conduct that it had elsewhere made unlawful, it does not follow that denationalization is a 'punishment,' any more than it can be said that loss of civil rights as a result of conviction for a felony * * * is a 'punishment' for any legally significant purposes", 356 U.S. at page 124, 78 S.Ct. at page 610, and that the legislation "is the result of an exercise by Congress of the legislative

power vested in it by the Constitution * * *." 356 U.S. at page 128, 78 S.Ct. at page 612.

While the provision involved in Trop and the provision here in question are not the same, the Chief Justice pointed out that they are "essentially" alike. 356 U.S. at page 93, 78 S.Ct. at page 594. The former decrees that conviction and dishonorable discharge for desertion in war time give rise to loss of citizenship. The latter decrees such loss for departing from or remaining outside the United States to avoid service in the armed forces during war time or a period of national emergency. The principal opinion in Trop comments at pages 93–94 of 356 U.S., at page 594 of 78 S.Ct. on Section 401(j)—the provision involved here but now known as Section 349(a) (10)—as follows:

> "This provision was also before the Court in Perez, but the majority declined to consider its validity. While Section 401(j) decrees loss of citizenship without providing any semblance of procedural due process whereby the guilt of the draft evader may be determined before the sanction is imposed, Section 401 (g), the provision in this case, accords the accused deserter at least the safeguards of an adjudication of guilt by a court-martial." [5]

We perceive no substantial difference between the constitutional issue in the Trop case and the one facing us.[6] The

---

5. In Perez v. Brownell, 356 U.S. 44, 78 S. Ct. 568, 2 L.Ed.2d 603, the petitioner had been declared to have lost his citizenship under Section 401(e) as well as under Section 401(j) of the Nationality Act of 1940. He claimed that both of the sections were unconstitutional. The Supreme Court held in its majority opinion that Section 401(e), which provided for loss of nationality by voting in a foreign election, was constitutional as a reasonable exercise of the power of Congress to deal with foreign affairs. In view of this holding, the Supreme Court did not find it necessary to consider also the constitutionality of Section 401(j).

6. In the case of Mendoza-Martinez v. Mackey, 9 Cir., 238 F.2d 239, the Court

of Appeals affirmed a decision of the District Court upholding the constitutionality of Section 401(j). The Supreme Court granted certiorari and remanded the cause to the District Court, 356 U.S. 258, 78 S.Ct. 713, 2 L.Ed.2d 757, for reconsideration in the light of Trop. On remand the District Court held that Section 401(j) is unconstitutional. Direct appeal was then made to the Supreme Court which noted probable jurisdiction, 359 U.S. 933, 79 S.Ct. 648, 3 L.Ed.2d 635, and again remanded to the District Court on a collateral issue unrelated to the constitutional question. Mackey v. Mendoza-Martinez, 362 U.S. 384, 80 S.Ct. 875, 4 L.Ed.2d 812.

Court's ruling there is controlling here. Otherwise, Judge Tamm and I, for reasons expressed in the dissenting opinion, would uphold the validity of the provision under which the plaintiff was declared to have lost his citizenship. We all conclude that subdivision (10) of Section 349(a) of the Immigration and Nationality Act of 1952 is unconstitutional.

Accordingly the motion of the plaintiff for summary judgment is granted and that of the defendant is denied.