Richard **PICKUS** et al., Appellees,

v.

**UNITED STATES BOARD OF PAROLE,**
Appellant.

No. 73–1987.

United States Court of Appeals,
District of Columbia Circuit.

Argued March 11, 1974.

Decided Oct. 11, 1974.

Rehearing Denied Dec. 10, 1974.

Victor D. Stone, Atty., Dept. of Justice, with whom Harold H. Titus, Jr., U. S. Atty. at the time the brief was filed, was on the brief for appellant. Earl J. Silbert, U. S. Atty. and Robert M. Werdig, Jr., Asst. U. S. Atty., entered appearances for appellant.

. Victor H. Kramer, Washington, D. C., with whom Richard B. Wolf, William L. McGovern, Abe Krash and Patrick F. J. Macrory, Washington, D. C., were on the brief for appellees.

Before HASTIE,[*] Senior Circuit Judge for the Third Circuit, and ROBB and WILKEY, Circuit Judges.

HASTIE, Senior Circuit Judge:

Section 4 of the Administrative Procedure Act (hereinafter, the Act) 5 U.S.C. § 553, requires that federal agency rulemaking be attended by advance public notice and opportunity for interested persons to participate through oral or written submission of data or opinion. For many years the United States Board of Parole has published guidelines which specify many of the factors which it considers in the exercise of its discretion to parole eligible federal prisoners. *E. g.,* Rules of the United States Board of Parole (1971).[1] It has never complied with section 4 of the Act.

In May, 1972, the appellees, three federal prison inmates, petitioned the appellant Board of Parole to conduct a public rule-making proceeding consistent with section 4 of the Act, to amend various of its stated rules.[2] Since the Board

---

[*] Sitting by designation pursuant to 28 U.S.C. § 294(d).

1. *Rules* has been published in successive edition since 1936. A copy of the 1971 edition,

in effect when the complaint was filed, appears in the record.

2. The petition focused on 28 C.F.R. §§ 2.14, 2.15, 2.16 and *Rules* at 14–16 (general factors

failed to act on their petition, appellees filed their complaint in the district court in January, 1973. The complaint did not specifically request the court to declare that any of the Board's rules had been illegally promulgated, but sought only to compel a response to the petition, pursuant to §§ 4(d), 6(d), and 10(e)(A) of the Act. In March, 1973, after appellees filed a motion for judgment by default, Maurice Sigler, Chairman of the Parole Board, denied appellees' May, 1972, petition in a letter to their attorney.

The parties then presented various motions and arguments to the district court, with consequent sharpening and modifying of the issues in the case. The Board admitted that it is an agency as that term is defined in section 2(a) of the Act, 5 U.S.C. § 551(1), and moved to dismiss the complaint as mooted by Mr. Sigler's letter denying appellees' petition. The court accepted the Board's concession, but correctly ruled the case not moot, because a controversy still existed over the validity of the rules then in effect. The court then suggested that those rules could be valid if and only if they were exempted from the effect of section 4. Accordingly, the case went forward on the issues of whether the denial of the inmate's petition for a public rule-making proceeding was arbitrary, and whether the rules then in effect should be declared void for failure to comply with section 4 of the Act. Following the submission of memoranda of law, the court held that the rules were void and ordered the

Board to adopt replacements in proceedings which complied with the Act. The Board has appealed from that order.[3]

The jurisdiction of the district court is the first issue that requires consideration. In a number of decisions, this court has recognized Section 10 of the Administrative Procedure Act, 5 U.S.C. §§ 701–706, as an independent source of jurisdiction that empowers district courts to review much agency action regardless of the amount in controversy. Independent Broker-Dealers' Trade Ass'n v. Securities and Exchange Commission, 1971, 142 U.S.App.D.C. 384, 442 F.2d 132, cert. denied, 404 U.S. 828, 92 S.Ct. 63, 30 L.Ed.2d 57; Scanwell Laboratories, Inc. v. Shaffer, 1970, 137 U.S. App.D.C. 371, 424 F.2d 859; Hurley v. Reed, 1961, 110 U.S.App.D.C. 32, 288 F.2d 844; Robbins v. Reed, 1959, 106 U.S.App.D.C. 51, 269 F.2d 242; but compare Pan American World Airways, Inc. v. Civil Aeronautics Board, 1968, 129 U.S.App.D.C. 159, 392 F.2d 483; Kansas City Power & Light Co. v. McKay, 1955, 96 U.S.App.D.C. 273, 225 F.2d 924, cert. denied, 350 U.S. 884, 76 S.Ct. 137, 100 L.Ed. 780. Decisions of other courts of appeals on this question are irreconcilably conflicting.[4] The Supreme Court has not clearly and explicitly settled the matter, but we read the Court's decisions as lending significant support to the view that Section 10 of the Administrative Procedure Act does authorize district courts to entertain suits challenging the validity of agency action without regard for the amount in controversy.

in parole selection) but apparently contemplated the possibility of wholesale reform of the Board's procedures. Two public interest groups were co-petitioners, but are not parties to this action.

3. This court has stayed the order of the district court pending appeal.

4. Cases which hold the Act to be an independent grant of district court jurisdiction include Bradley v. Weinberger, 1st Cir. 1973, 483 F.2d 410; Brandt v. Hickel, 9th Cir. 1970, 427 F.2d 53; Brennan v. Udall, 10th Cir. 1967, 379 F.2d 803; Deering Milliken, Inc. v. Johnston, 4th Cir. 1961, 295 F.2d 856; see also, In re School Board of Broward County, Florida, 5th Cir. 1973, 475 F.2d 1117.

Two circuits have reached contrary decisions: e. g., Zimmerman v. United States Government, 3d Cir. 1970, 422 F.2d 326; Twin Cities Chippewa Tribal Council v. Minnesota Chippewa Tribe, 8th Cir. 1967, 370 F.2d 529; but see State Highway Commission of Missouri v. Volpe, 8th Cir. 1973, 479 F.2d 1099 (noting intervening Supreme Court decisions).

Decisions of the Second Circuit recognize intra-circuit conflict: Toilet Goods Ass'n v. Gardner, 2d Cir. 1966, 360 F.2d 677, aff'd 387 U.S. 158, 87 S.Ct. 1520, 18 L.Ed.2d 697; Aguayo v. Richardson, 2d Cir. 1973, 473 F.2d 1090.

Citizens To Preserve Overton Park, Inc. v. Volpe, 1971, 401 U.S. 402, 91 S.Ct. 828, 28 L.Ed.2d 168; Abbott Laboratories v. Gardner, 1967, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681; Rusk v. Cort, 1962, 369 U.S. 367, 82 S.Ct. 787, 7 L.Ed.2d 809, aff'g, D.D.C.1960, 187 F.Supp. 683.

■ We hold that the district court had jurisdiction to entertain the present complaint under the mandate of Section 10(a) of the Act, 5 U.S.C. § 702, that "a person . . . adversely affected or aggrieved by agency action . . . is entitled to judicial review thereof;" the provision of Section 10(b), 5 U.S.C. § 703, that the "form of proceeding for judicial review is . . . any applicable form of legal action, including actions for declaratory judgments or writs of prohibitory or mandatory injunction or habeas corpus, in a court of competent jurisdiction";[5] and the requirement of Section 10(e), 5 U.S.C. § 706, that the "reviewing court shall . . . (2) hold unlawful and set aside agency action, findings and conclusions found to be . . . (D) without observance of procedure required by law. . . ."

■ We have considered the Board's argument that its promulgation of parole selection criteria is not subject to judicial review—whether or not subject to the Act—because release on parole is committed to agency discretion within the meaning of Section 10 of the Act, 5 U.S.C. § 701(a)(2), by 18 U.S.C. § 4203(a). But we are not reviewing the granting or denying of parole in a particular case, action which may reflect an unreviewable exercise of agency discretion. We are not even reviewing the merits of the rules and standards the Board has adopted. The appellees' complaint and our consequent adjudication address themselves solely to the procedures by which those rules may be formulated. The justiciability of such a complaint depends upon Section 10, particularly subsection (e), of the Act, as

already discussed, not the discretionary character of the Board's determinations as to when parole shall be granted. The giving of notice of rule-making and the consideration of consequent submissions by interested persons might inform, but would not otherwise impinge upon, the Board's discretion in framing its standards and guidelines.

■ We turn now to the merits of the appeal. The procedure below and certain events subsequent to the entry of judgment necessitate preliminary identification of the issues that are properly before us. First, although the complaint did not specifically ask for a declaration that the rules then in effect were invalid, and although it was never formally amended, the general prayer for necessary, just, and proper relief, coupled with the above mentioned focusing of the parties' attention upon their basic controversy about the rules' validity, justified the district court's adjudication of that issue. See also Rule 54(c), F.R.C.P. Thus, unless the question of the validity of the rules which the district court invalidated has since been mooted, that issue is properly before this court.

■ The mootness issue arises from the fact that on September 19, 1973, the Parole Board published new rules. 38 Fed.Reg. 26652, 31942. The first publication altered many of the Board's procedures for hearing and deciding parole applications. It also placed in the Federal Register, with slight change, the criteria for parole selection which appear in the 1971 *Rules, supra.* Those regulations, however, were made applicable to only one part of the country, and they do not apply to two of the appellees.

The November announcement consists of a complex, detailed table which purports to state the range of months which the Board will require an inmate to serve depending upon the severity of his offense (six classifications) and his "salient factor score" (four classifications), a number computed according to factors

---

5. The requirement that the reviewing court be one of "competent jurisdiction" can rea-

sonably be read as a recognition of generally applicable venue requirements.

also announced in the November publication. The November regulation apparently applies nationwide and may largely replace prior rules regarding the criteria used for parole selection, though no such statement appears. In any event, the November regulation speaks to one of the areas of Board operation which the original complaint addressed. Within that area it is a more rigid structuring of the Board's discretion than were the criteria it replaces. Indeed, it is designed to, and almost surely will lead to, more nearly uniform decisions, and more restricted decision-making. In these circumstances, the Board's September and November pronouncements preserve, rather than moot, the original controversy over the validity of rules adopted without compliance with Section 4 of the Act.

█ As it promulgated the November regulation, the Board asserted that it was not subject to the Act, the belief of the court below notwithstanding. 38 Fed.Reg. 31942. The Board reasoned then and contends on this appeal that it is not an "agency" as that term is defined in the Act, although in the district court it conceded that it is such an "agency" and subject to the Act. Appellees do not rely on that concession and we shall dispose of the Board's present contention on its merits.

Section 2(a) of the Act [6] defines agency for purposes of the Act as "each authority of the United States", other than certain exclusions. None of the specified exclusions embraces the Board. Moreover, this court has said that the Act, including the definitional section, should be received hospitably. See, *e. g.*, Soucie v. David, 1971, 145 U.S.App.D.C. 144, 448 F.2d 1067, 1073; Chotin Towing Corp. v. Federal Power Commission, 1957, 102 U.S.App.D.C. 69, 250 F.2d 394. Legislative history, though sparse, supports a broad, inclusive reading of the Act. S.Doc.No.248, 79th Cong., 2d Sess. (1946) at 196, 253, 305, 354.

None of the Board's arguments for exemption are impressive. The fact that the legislative history of the Act makes no reference to the Board or its unique problems is not significant because the same is true for a great number of agencies that unquestionably are covered. Indeed, the bill was not drafted as one which dealt with particular agencies by name, but rather as a regulation of particular types of functions in which agencies of the Executive Branch generally engage. S.Doc.No.348 at 191 (S.Rep.), 250 (H.R.Rep.). Thus, some types of functions were exempted, not particular Executive Departments or agencies. Such functions as this case presents were not exempted. [7]

---

6. 5 U.S.C. § 551(1) (1970):
 For the purpose of this subchapter—
 (1) "agency" means each authority of the United States, whether or not it is within or subject to review by another agency, but does not include—
 (A) the Congress;
 (B) the courts of the United States;
 (C) the governments of the territories or possessions of the United States;
 (D) the government of the District of Columbia;
 or except as to the requirements of section 552 of this title—
 (E) agencies composed of representatives of the parties or of organizations of the parties to the disputes determined by them;
 (F) courts martial and military commissions;
 (G) military authority exercised in the field in time of war or in occupied territory; or

 (H) functions conferred by sections 1738, 1739, 1743, and 1744 of title 12; chapter 2 of title 41; or sections 1622, 1884, 1891–1902, and former section 1641(b)(2), of title 50, appendix;

7. Revocation proceedings have often been held not subject to the Act, *e. g.*, Hyser v. Reed, 1963, 115 U.S.App.D.C. 254, 318 F.2d 225, 237 (en banc), cert. denied, 375 U.S. 957, 84 S.Ct. 446, 11 L.Ed.2d 315, Hiatt v. Compagna, 5th Cir. 1949, 178 F.2d 42, aff'd by an equally divided court, 1950, 340 U.S. 880, 71 S.Ct. 192, 95 L.Ed. 639, but whether the Board was an agency was not at issue.
 In Hurley v. Reed, *supra*, 110 U.S.App.D.C. at 34, 288 F.2d at 846, this court said that "the Board is clearly an administrative agency . . . ." although that was not the issue there.

The Board's legislative history argument seems, if anything, contrary to its position. The Walter-Logan bill, H.R. Bill No. 6324, 76th Cong. 3d Sess. (1940), a predecessor of the Act which President Roosevelt vetoed, contained an express exemption for the Department of Justice that would have covered the Board. S.Doc.No.145, 76th Cong., 3d Sess. (1940) at 24–25. The Act, however, contains no exemption for either the Department or the functions at issue here. Its draftsmen were familiar with the then recently ill-fated Walter-Logan bill and deliberately adopted a different scheme. Whether, as the Board argues, "the rationale for exemption of the criminal process . . . remains viable", is irrelevant to this case since Congress abandoned that approach.

■ We find unpersuasive an argument of the Board that it is exempt because the Probation Service is exempt. The exemption of the latter is warranted not by the functions it performs as the Board suggests, but by its status as an auxiliary of the courts, which, unlike agencies of the executive branch, are specifically excluded.

The Board also argues that Gagnon v. Scarpelli, 1973, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656, holding that the due process clause does not require appointment of counsel in every parole revocation proceeding of an indigent person, suggests that the Act does not apply to the Board, because Section 6(a) of the Act, 5 U.S.C. § 555(b), authorizes counsel at agency hearings. But aside from the fact that Gagnon involved the application of the Constitution to the states, not the impact of a statutory regulation of federal administration, Section 6(a) does not suggest that the ap-

pointment of counsel is required.[8] Hyser v. Reed, supra n. 7, 115 U.S.App.D.C. 254, 318 F.2d at 237.

A major Board contention is that, functionally viewed, its actions here at issue are exempt from the rule-making procedures because they are either general statements of policy, interpretative rules, or rules relating to agency organization, practice or procedure, all of which are explicitly exempted by Section 4 (a).[9] We now consider each of those categories.

Several courts have ruled that agency action cannot be a general statement of policy if it substantially affects the rights of persons subject to agency regulations. Lewis-Mota v. Secretary of Labor, 2d Cir. 1972, 469 F.2d 478, 482; Texaco, Inc. v. Federal Power Commission, 3d Cir. 1969, 412 F.2d 740, 744; National Motor Freight Traffic Ass'n v. United States, D.D.C.1967, 268 F.Supp. 90, 95–97, aff'd, 393 U.S. 18, 89 S.Ct. 49, 21 L.Ed.2d 19; cf., Public Service Commission of State of New York v. Federal Power Commission, 1967, 126 U.S.App.D.C. 26, 373 F.2d 816; rev'd in part on other grounds, 1968, 391 U.S. 9, 88 S.Ct. 1526, 20 L.Ed.2d 388; see also Seaboard World Airlines v. Gronouski, D.D.C.1964, 230 F.Supp. 44. As the cited cases state, that outer boundary of the general policy exemption derives from congressional purpose in enacting Section 4—that the interested public should have an opportunity to participate, and the agency should be fully informed, before rules having such substantial impact are promulgated.

The guidelines which the Board had adopted prior to this action, Rules, supra, at 14–16, were of a kind calculated to have a substantial effect on ultimate

---

8. This court has ruled that at least retained counsel must be permitted at revocation proceedings. Compare, Hyser, supra, with Glenn v. Reed, 1961, 110 U.S.App.D.C. 85, 289 F.2d 462.

9. The Section 4(a) exemption is by its terms from only the notice requirement, but Section 4(b) applies only if Section 4(a) also applies.

The Board also claims exemption under the agency personnel provision of Section 4, 5 U.S.C. § 553(a)(2), asserting that prisoners are Board personnel. We reject this argument as frivolous. Prisoners are a Board regulated group, not its employees.

parole decisions. They consist of nine general categories of factors, broken down into a total of 32 sub-categories, often fairly specific. Although they provide no formula for parole determination, they cannot help but focus the decision-maker's attention on the Board-approved criteria. They thus narrow his field of vision, minimizing the influence of other factors and encouraging decisive reliance upon factors whose significance might have been differently articulated had Section 4 been followed.[10]

The November regulation is more formula like, and hence has an even greater impact on an inmate's chances for parole. Under that regulation the amount of time an inmate serves in prison will depend on five elements, three of which the regulation firmly controls. First, it places each offense in one of six categories of relative severity. The determination into which category a given offense falls places a particular minimum and maximum on the amount of time almost all offenders will serve. Second, an inmate's salient factor score is determined according to rigid criteria, items A–I, 38 Fed.Reg. 31945. Under the rule, the score is computed using only those criteria, and the quantitative input of each is specified as well. Computation of the score is a purely mechanical operation. Third, the chart sets a narrow range of months of imprisonment that will be required for a given category of offense and a given salient factor score.[11] This is not to suggest that these determinants are either unfair or undesirable, but merely that they have significant consequences. Thus, the rules which define parole selection criteria, new and old, are substantive agency action, for they define a fairly tight framework to circumscribe the Board's statutorily broad power.

Additionally, these are not interpretative rules. As the word interpretative suggests, and as the legislative history makes clear, interpretative rules consist of administrative construction of a statutory provision on a question of law reviewable in the courts. S.Doc.No.248, *supra* at 18–19. Treasury Regulations interpreting the Internal Revenue Code are a prime example. The Board's statements are not interpretations of a statute's meaning. Rather, they are self imposed controls over the manner and circumstances in which the agency will exercise its plenary power. They have the effect of law and are not reviewable except for arbitrariness. Hence, they are not the kind of action Congress undertook to exempt from statutory requirements that regulate the rule-making process. S.Doc.No.248, *supra* at 18–19; *accord,* Gibson Wine Co. v. Snyder, 1952, 90 U.S.App.D.C. 135, 194 F.2d 329; National Ass'n of Ins. Agents v. Board of Governors of the Federal Reserve System, 1974, 160 U.S.App.D.C. 144, 489 F.2d 1268.

 In keeping with the type of action Congress sought to exempt, a matter "relating to practice or procedure" means technical regulation of the form of agency action and proceedings. This category too, should not be deemed to include any action which goes beyond formality and substantially affects the rights of those over whom the agency exercises authority. Certainly, it does not include formalized criteria adopted by an agency to determine whether claims for relief are meritorious. Kessler v. F. C. C., 1963, 117 U.S.App.D.C. 130, 326 F.2d 673, 679–682; Ranger v. F. C. C., 1961, 111 U.S.App.D.C. 44, 294 F.2d 240, 244; *Seaboard World Airlines, supra.*

 Judged by the same standards, the Board's regulations concerning pa-

---

10. For example, the September 24 promulgation dropped certain factors. *Compare, e. g., Rules, supra* at 15 (E, F) *with* 38 Fed.Reg. at 26654 (§ 2.24(e), (f)).

11. The other two factors, not controlled by the regulation, the (1) when within the specified

range an inmate should be released, and (2) whether circumstances warrant departure from the chart. Given that the first of these provides some flexibility, the second is likely to receive infrequent use.

role hearings also seem not to fall within any of the exemptions from Section 4. These are no more interpretative rules, general statements of policy, matters relating to personnel, or matters left to agency discretion than are the criteria used to dispose of parole applications. The Board's argument that these are rules of agency procedure and practice is more substantial, but, as stated above, adherence to congressional purpose counsels a construction of this exemption that excludes from its operation action which is likely to have considerable impact on ultimate agency decisions. If the regulations regarding parole hearings are likely to produce parole decisions different from those which alternatives would be likely to produce, then the exemption should not apply. On the other hand, such a regulation as Section 2.15, which merely prescribes order and formality in the transaction of Board business, is clearly within the procedure and practice exemption.

 The district court properly decided that the Board's challenged rules, as they existed when this suit was filed, were essentially invalid. Moreover, since the new guidelines for decision upon the granting of parole adopted during the pendency of this suit are invalid for the same reason, the district court's order that any replacements be adopted in proceedings that conform to the Act continues to be appropriate and essentially correct. However, the district court shall be free to modify its judgment to specify and exclude from its mandate any existing rules of a type that, under the rationale of this opinion, could properly be adopted without notice and opportunity to be heard.

The judgment is affirmed.

## ON PETITION FOR REHEARING

PER CURIAM:

The appellant has filed a petition for rehearing addressed solely to the question of the retroactive effect of our decision in this case upon past Parole Board hearings and decisions in individual cases.

 Our opnion in this case did not purport to invalidate and our decision does not have the effect of invalidating past determinations of the Board upon the merits of particular cases. *Cf.* Wolff v. McDonnell, decided June 26, 1974, 418 U.S. 539, at 573, 94 S.Ct. 2963 at 2983, 41 L.Ed.2d 935.

The petition for rehearing is denied.