ST. GEORGE'S UNIVERSITY SCHOOL
OF MEDICINE, Plaintiff,

v.

Terrel H. BELL, Secretary of Education
et al., Defendants.

No. 79–1177.

United States District Court,
District of Columbia.

May 1, 1981.

James W. Jones, Leonard B. Simon, Washington, D.C., for plaintiff.

Paul Blankenstein, Leland Ware, Anne Buxton Sobol, Dept. of Justice, Washington, D.C., for defendants.

## MEMORANDUM OPINION

JOHN GARRETT PENN, District Judge.

The plaintiff, a medical school located in St. George's, Grenada, West Indies, filed this action for declaratory and injunctive relief and seeks an order requiring the defendants [1] to grant plaintiff's application for eligibility to participate in the Guaranteed Student Loan Program (GSLP) provided for under the Higher Education Act of 1965 (Act), as amended, 20 U.S.C. § 1071 *et seq.* Plaintiff also seeks injunctive relief to redress defendants' alleged improper withdrawal of and refusal to reinstate such eligibility from 1977 to the date of the complaint.

The case is before the Court on plaintiff's motion for partial summary judgment and defendants' motion for summary judgment. There are no outstanding issues of genuine fact in the case.

### I

The plaintiff began operating as a medical school on January 17, 1977. Plaintiff had been advised by letters dated October 18, 1976 and March 3, 1977, that it "[had] been determined to be an 'eligible institution' to apply for participation in the Guaranteed Student Loan Program established by the Higher Education Act of 1965, as amended". Compl.Exs. I and II.[2] Plaintiff was thereafter notified on July 7, 1977, that it was ineligible. The grounds for this determination were as follows: (1) Plaintiff had not applied for and been accepted for membership in the Association of Commonwealth Universities, and (2) plaintiff was a school operated for profit. Compl.Ex. III. The definition of a "institution for higher education" requires among other things, that the institution "is accredited by a nationally recognized accrediting agency or association", 20 U.S.C. § 1085(b)(5), and "is a public or other nonprofit institution", 20 U.S.C. § 1085(b)(4).

Plaintiff was advised that, since it was a proprietary institution and thus fell without the definition of an institution for higher education, it could nevertheless attempt to qualify as a "vocational school". Compl.Ex. III. To qualify as a vocational school, plaintiff is required to demonstrate that it is comparable to a vocational school, and that "it has been in existence for two years or has been specially accredited by the Secretary as an institution meeting the other requirements [of the Act]". 20 U.S.C. § 1085(c)(3). Obviously, plaintiff could not meet those conditions in 1977 since it only began operating in January of that year.

On December 14, 1978, the plaintiff reapplied for a determination of eligibility effective January 17, 1979, the date of its second anniversary. The defendants had not replied to the application at the time this action was filed. Thereafter, the defendants denied the application. However, on April 23, 1979, four days before the action was filed, the agency published a Notice of Proposed Rulemaking (NPRM) 44 Fed.Reg. 23888–23889, which would require that the institution demonstrate that 95%

---

1. The defendants have been substituted for the originally named defendants pursuant to Fed.R.Civ.P. 25(d).

2. Plaintiff incorrectly states that it had been determined to be "eligible to participate" in the GSLP, *see* Compl. ¶ 2, however, no such determination had been made. The letters referred to merely stated that the defendants determined that plaintiff was eligible "to apply" for participation in GSLP.

of its graduates, who were citizens of the United States and who had taken the examination of the Educational Commission for Foreign Medical Graduates (ECFMG), have passed that examination. Furthermore, the proposed rule would require that a foreign medical school have graduated two classes before it is able to qualify for participation in the program.

The genesis of the proposed rule was that, up to about the time plaintiff applied for the GSLP, the defendants had not established a system for accreditation for foreign students. *See* Ross Aff. ¶¶ 3–5.[3] The criteria set forth in the proposed order was based upon the determination that "at least 95 percent of the graduates of any U.S. medical school taking the ECFMG examination for certification purposes would pass the examination on the first attempt". The defendants determined that this should be based upon the performance of two graduating classes. The NPRM noted that "[t]his comparability test establishes a comparable likelihood the GSLP loans will be repaid".[4]

The NPRM also noted that the approval of foreign medical schools for the GSLP in the past, had been on an *ad hoc* basis "because most of them enrolled very few American students". The need for the regulation is the fact that the number of American students attending foreign medical schools has increased, resulting in an increased number of applications for participation in the GSLP.

The Court understands that the proposed rule has not yet been promulgated and that there is a virtual moratorium on all applications.

The defendants have denied the plaintiff's application on the grounds that plaintiff has not yet had two graduating classes.[5] And, as an obvious consequence, plaintiff has not had 95 percent of its American students take and pass the ECFMG examination.[6]

## II

■ Plaintiff seeks to have the Court reinstate plaintiff for participation in the GLSP, retroactive from 1977 to the date of the filing of the complaint, April 27, 1979. This request is without merit and must be rejected for several reasons.

First, as already noted, plaintiff has mischaracterized the letters which purportedly advised plaintiff that it was eligible for participation in the GSLP. The two letters cited by plaintiff, Compl.Exs. I and II, merely state that plaintiff is an "eligible institution" to "*apppply*" for participation in the GSLP. Neither letter states that plaintiff is eligible for the GSLP. The letters reflect only a notice of plaintiff's "threshold eligibility" to apply for participation in the GSLP. *See* Ross Aff. ¶ 7. Thereafter additional information came to the attention of the defendants which caused them to withdraw even the notification of threshold eligibility. *See* Ross Aff. ¶¶ 8–12. It also came to the attention of the defendants that plaintiff was established as a profit-making institution. *See* Ross Aff. ¶ 20. This factor alone disqualified plaintiff un-

---

3. Leslie W. Ross was the Chief of the Institution Eligibility Branch of the Division of Eligibility and Agency Evaluation, Bureau of Higher and Continuing Education, Office of, now Department of, Education.

4. This Court can find nothing wrong with the proposed rule. There is nothing in the record to rebut the 95 percent figure established by the NPRM and certainly it is not unreasonable to base that determination on the performance of two graduating classes.

5. The second graduating class will graduate in 1984.

6. Defendants also advised that they had not approved the school because of the reservations expressed by the Grenada Medical Association and because of plaintiff's nonmembership in the Association of Commonwealth Universities. Plaintiff is unable to meet the latter test because it consists of only one college, that being in medicine, and thus does not qualify as a university under the standards set by the Association of Commonwealth Universities. At the time of the oral argument, and in subsequent filings, the defendants have advised the Court that plaintiff's disqualification is no longer based upon either the reservation expressed by the Grenada Medical Association or its nonmembership in the Association of Commonwealth Universities.

der the definition of an institution of higher education.

Second, once the defendants had sufficient information concerning the plaintiff, it was obvious that plaintiff was not eligible to participate in the GSLP as an institution of higher education, because plaintiff was not accredited by a nationally recognized accrediting agency or association, such as the Association of Commonwealth Universities, and more importantly, because it is not a public or nonprofit institution. See 20 U.S.C. § 1085(b)(4) and (b)(5).

Third, even if plaintiff were treated as a vocational school [7] it admittedly had not been in existence for two or more years. See 20 U.S.C. § 1085(c).

The facts concerning the period 1977 to 1979 are not in dispute. Under the statute, plaintiff was not eligible to participate in the GSLP as either an institution of higher education, because of its lack of recognition and because it was a proprietary institution, or as a vocational school, because it had been in existence for less than two years. Since it is clear that plaintiff was not eligible to participate in the GSLP from January 1977 to January 1979, it is clear that defendants are entitled to summary judgment on that issue.

### III

■ Although the proposed rule, 44 Fed. Reg. 23888–23889, is not directly before the Court for review, it is indirectly before the Court since defendants are using the criteria established by the proposed rule to deny plaintiff's eligibility for participation in the GSLP. The question concerning the defendants ad hoc determination without having promulgated a formal rule will be discussed at a later point, see Part IV, infra, and here the Court will consider only whether the rule or informal rule is reasonable and within the discretion of the agency.

As has already been noted, the Court finds that the proposed rule is reasonable in that it addresses the issues of concern to plaintiff and similar institutions, but more important of course, the concerns of potential students and the Government's interest in repayment of the loans. The standards set forth in the rule are not arbitrary or capricious based upon the present information before the Court.[8] The rule addresses a matter of legitimate concern to the directors of GSLP and, in the view of the Court, establishes reasonable guidelines for recognizing a foreign medical school seeking to participate in the GSLP.

Certainly, it is not unreasonable to set the same standard for students attending the plaintiff institution as for other medical students taking the ECFMG examination. The agency has established a rational basis for setting 95 percent as the standard. Likewise, it is not unreasonable to require plaintiff to graduate two classes and to demonstrate that 95 percent of the American graduates who took the ECFMG passed.

It must be remembered that the GSLP is not established primarily for the benefit of participating schools, and this is especially true when considering foreign schools. In the case of schools located within the country, and over which recognized agencies and associations have control over accreditation, there is a need to keep such schools viable so that they can supply the nation with its medical needs. The same is not true of foreign schools.

Schools such as the plaintiff are properly subject to close scrutiny, keeping in mind the many questions raised about its teaching staff, its relationship with a hospital in Grenada, the reservations by the Grenada Medical Association and the fact that it is profit making and was only established in 1977. Recognition of such schools for the purposes of the GSLP may be considered as Government approval of its program. The claim by plaintiff, a profit-making institu-

---

7. It is hard to understand how plaintiff can be considered as a vocational school since it does not fit within the term business, trade or technical institution. See 20 U.S.C. § 1085(c).

8. This may change of course, after a formal and full hearing on the rule.

tion, that it may suffer financially, if not found to be eligible to participate in the GSLP, has little merit.

## IV

The final, and perhaps the most important issue before the Court, is whether the defendants can impose the standards set out in the proposed rule without having promulgated the rule. Plaintiff argues they cannot and must therefore rely upon previous standards. Defendants contend that this is a situation where they can proceed on a case by case basis.

It is important to note that defendants contend that they have no set rule or regulation in cases involving foreign medical schools and that, because of the small number of requests received in past years, they have considered such requests on an *ad hoc* basis. *See* 44 Fed.Reg. 23888. It is only because of the increase in requests of this nature that they have now determined that there is a need for a regulation. *Id.*

Normally, agencies which seek to promulgate new rules are required to give notice by publishing in the Federal Register the date, time and place for hearing on the proposed rule, the reference to the legal authority under which the rule is proposed and the terms or substance of the proposed rule or the description of the subject and issue involved. 5 U.S.C. § 553(b). The above requirements "were designed to assure fairness and mature consideration of rules of general application" (citation omitted). *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 764, 89 S.Ct. 1426, 1428, 22 L.Ed.2d 709 (1969).

There are occasions when notice and hearing are not required, those being when the agency is considering interpretive rules, general statements of policy, or rules of agency organization, procedure or practice or when an agency "for good cause" finds "that notice and public procedure thereon are impractical, unnecessary, or contrary to the public interest". 5 U.S.C. § 553(b)(A) and (B).

The defendants here did not choose to proceed under 5 U.S.C. § 553(b)(B) (notice and public procedure impractical, unnecessary or contrary to the public interest) presumably because they did not seek to change, modify or amend the rule but were instead, considering a *new* rule. There was no old rule other than the *ad hoc* determinations respecting each applicant. Nor do the defendants seriously argue that no notice was required on the grounds that the proposed rule was but an interpretive rule. *See* 5 U.S.C. § 553(b)(A). That the defendants *did not* consider it an interpretive rule thus not requiring notice, absent when notice is required by statute, is revealed by the fact that defendants *did* publish a NPRM soliciting comments. *See* 44 Fed. Reg. 23888. The question then is whether, pending the rule-making process, the defendants can continue to proceed on an *ad hoc* basis.

The Court in *Securities and Exchange Commission v. Chenery Corp.*, 332 U.S. 194, 201–202, 67 S.Ct. 1575, 1579–1580, 91 L.Ed. 1995 (1947), *rehearing denied*, 332 U.S. 783, 68 S.Ct. 26, 92 L.Ed. 367 (*Chenery II* )[9] held that even when an agency was dealing in an area in which it might have promulgated a general rule under its statutory rule-making powers, the fact that the agency did not anticipate the problem and promulgate a rule does not mean that all power of the agency to perform its statutory duty has been withdrawn. The Court noted that "[t]o hold that the Commission had no alternative in this proceeding but to approve the proposed transaction, while formulating any general rules it might desire for use in future cases of this nature, would be to stultify the administrative process". *Id.* The Court has continued to recognize this rule in cases decided after the passage of the present Administrative Procedure Act. *Sée NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 94 S.Ct. 1757, 40 L.Ed.2d 134 (1974); *NLRB v. Wyman-Gordon Co., supra.*

---

**9.** *See also Securities and Exchange Commission v. Chenery Corp.*, 318 U.S. 80, 63 S.Ct.

454, 87 L.Ed. 626 (1943) (*Chenery I*).

Applying these decisions to the matter now before the Court, the Court concludes that defendants did not improperly consider the plaintiff's application by using the proposed rule as a guideline. Defendants, by using the proposed rule as a standard, did not change an existing rule, for as defendants have stated in the NPRM, there is no prior regulation or rule on this point. At, least, the proposed rule places all applicants, schools and potential students, on notice of the standards to be used pending the promulgation of a rule and the standard appears to be inherently fairer than the case by case determination utilized by defendants in the past.

Plaintiff argues that the above cases are distinguishable from the instant case because in each of those cases, the agency promulgated the challenged rule during the process of adjudicatory proceedings. The Court recognizes this difference, there being no adjudicatory proceeding here, but concludes that on the facts of this case, the rule pronounced in *Chenery II* and its progeny is applicable. What the defendants are doing here is considering the proposed application on an *ad hoc* basis as before but with a published guideline. If the defendants cannot utilize those guidelines, it means a return to the previous *ad hoc* determinations without guidelines. Additionally, the Court cannot conclude that the defendants lack power to act because they did not anticipate the problem, for to so hold "would be to stultify the administrative process". *Chenery II*, 332 U.S. at 202, 67 S.Ct. at 1580.

Plaintiff also argues that the decisions in *Pickus v. United States Board of Parole*, 165 U.S.App.D.C. 284, 507 F.2d 1107 (1974) and *Lewis-Mota v. Secretary of Labor*, 469 F.2d 478 (2d Cir. 1972) should control here, but those cases are distinguishable because in each, the agency, without the benefit of a NPRM, promulgated a change to a prior existing rule. There is no evidence that there were any previous policies which amounted to a rule in this case.

The standards set forth in the proposed rule and which are now the basis for the *ad hoc* determination pending formal adoption of the proposed rule, appear to be reasonable and within the power and discretion of the defendants. Therefore, for the reasons stated, this Court will not disturb the decision of the defendants concerning the eligibility of the plaintiff and will not grant the injunctive relief requested by the plaintiff. Accordingly, the Court concludes that the defendants are now entitled to summary judgment and that this case should be dismissed.

While reaching that conclusion, the Court notes that defendants correctly concluded that a regulation in this area is required, *see* 44 Fed.Reg. 23888, and that the defendants should proceed in a timely fashion to promulgate a rule. A formal rule-making procedure is required since the proposed rule does not fall within the definition of an interpretive rule, a general statement of policy, or a rule of the agency, organization, procedure or practice as described in 5 U.S.C. § 553(b)(A). *See Pickus v. United States Board of Parole, supra*, 165 U.S.App. D.C. at 289–291, 507 F.2d at 1112–1114.

An appropriate order denying plaintiff's partial motion for summary judgment and granting defendants' motion for summary judgment and dismissing this case will be entered.