643 F.2d 1
 207 U.S.App.D.C. 6
 Estelle CARTER, Individually and on behalf of all others
similarly situated, Glossie Middleton, Appellants,
v.
Max CLELAND, Administrator of Veterans Affairs, Individually
and in his official capacity.
 No. 79-1843.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued May 22, 1980.
Decided Oct. 17, 1980.
 
 Gordon Berman, Baltimore, Md., and Dennis W. Carroll, Washington, D. C., with whom Edward C. King, Washington, D. C., was on brief, for appellants.
 Alfred Mollin, Atty., Civ. Div., Dept. of Justice, Washington, D. C., with whom Alice Daniel, Asst. Atty. Gen., Carl S. Rauh, U. S. Atty., William G. Kanter, Atty., Civ. Div., Dept. of Justice, Washington, D. C., were on brief, for appellee.
 Before WALD and MIKVA, Circuit Judges, and HOWARD T. MARKEY,* Chief Judge, United States Court of Customs and Patent Appeals.
 Opinion for the Court filed by Circuit Judge MIKVA.
 MIKVA, Circuit Judge:
 
 
 1
 Appellants, Estelle Carter and Glossie Middleton, challenge the Veterans Administration's "birth by another rule," on the basis of which they were deemed ineligible for death pension benefits. Both women were married to World War II veterans, who drank to excess and physically abused them. As a result of this mistreatment, they were separated from their husbands. Thereafter appellants had almost no personal contact with their husbands, and each eventually had children by other men.[1] No divorce was obtained in either case. When the veterans died, the women applied for death pension benefits. Benefits were denied on the ground that the widows did not qualify as "surviving spouses" under 38 U.S.C. § 101(3) (1976).[2] The Administrator reasoned that the births of children by other men indicated that appellants intended to terminate their marital relationships. See App. at 66, 82.
 
 
 2
 Appellants argue that the Administrator's "birth by another rule" is invalid because its use was not authorized by statute and because it operated to deny them due process of law by creating an irrebuttable presumption. We are sympathetic to the plight of appellants, who were forced from their homes by abusive husbands and then denied benefits on the ground that they were partly to blame for the separations. But because appellants' claims are in substance challenges to the sufficiency of the evidence supporting the Administrator's determination, we must direct them and others similarly situated to the policymakers for relief. The questions appellants present are outside the narrow scope of review permitted by the veterans' benefits legislation, and we must dismiss for want of jurisdiction.
 
 I. BACKGROUND
 
 3
 Any discussion of Veterans Administration decisions must be prefaced with the recognition of the severely limited review that Congress has decreed for such cases:(T)he decisions of the Administrator on any question of law or fact under any law administered by the Veterans' Administration providing benefits for veterans and their dependents or survivors shall be final and conclusive and no other official or any court of the United States shall have power or jurisdiction to review any such decision by an action in the nature of mandamus or otherwise.
 
 
 4
 38 U.S.C. § 211(a) (1976).
 
 
 5
 Pension benefits are available to those surviving spouses of veterans who meet certain eligibility requirements not contested here. See 38 U.S.C. § 541 (1976). Appellants were denied benefits on another ground-that they were not "surviving spouses" within the terms of the statute:
 
 
 6
 (A) person of the opposite sex who was the spouse of a veteran at the time of the veteran's death, and who lived with the veteran continuously from the date of marriage to the date of the veteran's death (except where there was a separation which was due to the misconduct of, or procured by, the veteran without the fault of the spouse) and who has not remarried or (in cases not involving marriage) has not since the death of the veteran, and after September 19, 1962, lived with another person and held himself or herself out openly to the public to be the spouse of such other person.
 
 
 7
 38 U.S.C. § 101(3) (1976) (emphasis supplied). It is the continuous cohabitation component of the definition that is at issue here. The Administrator has interpreted the exception to that requirement to mean that the surviving spouse must be without fault both at the time of the initial separation and for its duration:
 
 
 8
 The requirement that there must be continuous cohabitation from the date of marriage to the date of death of the veteran will be considered as having been met when the evidence shows there was no separation due to the fault of the surviving spouse.
 
 
 9
 38 C.F.R. § 3.53(a) (1979) (emphasis supplied). At no time during the separation must the spouse evidence "an intent ... to desert the veteran." Id. § 3.53(b). One indication of a woman's intent to terminate a marital relationship is birth of a child by another man. The "birth by another rule" is set forth as an administrative guideline in the Veterans Administration's (VA) manual:
 
 
 10
 The birth of a child to the claimant as the result of relations with a person other than the veteran will be accepted as proof of lack of continuous cohabitation within the meaning of the law in the absence of evidence that the veteran condoned the claimant's conduct.
 
 
 11
 Veterans Administration Department of Veterans Benefits Manual M21-1 § 8.11(c) (4) (1975), reprinted in App. at 86.
 
 
 12
 Appellants argue that this guideline is invalid on two related grounds. First, they claim that its promulgation exceeded the Administrator's authority. According to appellants, Congress intended that the Administrator make case-by-case determinations of a surviving spouse's fault and did not contemplate that certain conduct act as a complete bar to payment of benefits. Second, appellants maintain, the guideline is violative of due process because it creates an irrebuttable presumption of fault and therefore of ineligibility for benefits.
 
 
 13
 The court below held that section 211(a) precluded review of appellants' nonconstitutional claims. The district court found this provision inapplicable to appellants' constitutional challenges but rejected them on the merits.[3] 472 F.Supp. 985 (D.D.C.1979). This appeal followed.
 
 II. JURISDICTION
 
 14
 Jurisdictional limitations such as section 211(a) that shield agency actions from review are interpreted narrowly: a "basic presumption of judicial review" is followed absent "clear and convincing evidence" of congressional intent to the contrary. Abbott Laboratories v. Gardner, 387 U.S. 136, 140, 141, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967); see De Magno v. United States, 636 F.2d 714, 721 (D.C. Cir. 1980). That evidence does exist here. The provision is written in no uncertain terms: "the decisions of the Administrator on any question of law or fact ... shall be final and conclusive ... and no other official or any court of the United States shall have power or jurisdiction to review any such decision." Moreover, Congress amended the section in 1970 for the specific purpose of overruling a line of cases from this court that in Congress' view had given too limited a reading to the no-review clause.[4] See H.R.Rep. No. 1166, 91st Cong., 2d Sess. 8-11, 19-24 (1970); see also Johnson v. Robison, 415 U.S. 361, 371-73, 94 S.Ct. 1160, 1168, 39 L.Ed.2d 389 (1974); de Rodulfa v. United States, 461 F.2d 1240, 1244-50 (D.C.Cir.), cert. denied, 409 U.S. 949, 93 S.Ct. 270, 34 L.Ed.2d 220 (1972). The D.C. Circuit had interpreted the statute's bar on review of VA decisions "concerning a claim for benefits or payments," 38 U.S.C. § 211(a) (1964) (amended 1970), as applying only to the Administrator's action on initial applications for benefits. Once a claimant had been granted benefits, judicial scrutiny of subsequent decisions by the Administrator affecting those benefits was permissible. In order to restore vitality to the no-review clause, Congress amended it in 1970 to its present form-barring review of any "decision( ) of the Administrator ... under any law" providing veterans' benefits. Congress, then, has made clear its concern that the Administrator's disposition of claims for veterans' benefits not lightly be disturbed.
 
 
 15
 A. Reviewability of Constitutional Claims Generally
 
 
 16
 Despite Congress' undeniable intent to insulate VA decisions from judicial review, the courts have found that there must be some limit to the reach of section 211(a). For example, the Supreme Court held in Johnson v. Robison, 415 U.S. 361, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974), that section 211(a) does not bar judicial consideration of challenges to the constitutionality of a veterans' benefits statute. The Court, noting that a contrary reading would raise serious questions regarding the constitutionality of the provision, turned first to its language, which prohibits review only of "decisions ... on any question of law or fact under any law." That clause, held the Court, was aimed at review of decisions that arise in the VA's administration of veterans' benefits legislation: "(a) decision of law or fact 'under' a statute is made by the Administrator in the interpretation or application of a particular provision of the statute to a particular set of facts." Id. at 367, 94 S.Ct. at 1165.
 
 
 17
 The Court then reviewed the legislative history and identified two primary congressional purposes behind section 211(a):
 
 
 18
 (1) to insure that veterans' benefits claims will not burden the courts and the Veterans' Administration with expensive and time-consuming litigation, and (2) to insure that the technical and complex determinations and applications of Veterans' Administration policy connected with veterans' benefits decisions will be adequately and uniformly made.
 
 
 19
 Id. at 370, 94 S.Ct. at 1167 (footnotes omitted). These policies were not threatened, held the Court, by permitting judicial consideration of challenges to the constitutionality of a statute. Such claims would not unduly burden the courts by their volume and do not involve technical questions within the particular expertise of the Administrator. The Court found nothing to the contrary in the legislative history of the 1970 amendment to section 211(a).
 
 
 20
 Controversy has since developed regarding the scope of this exception to section 211(a). Johnson itself involved a challenge to the constitutionality of the underlying statute, specifically, to that portion that denied educational benefits to Selective Service registrants who were conscientious objectors and who had therefore elected to fulfill their military commitment by alternative civilian service rather than active military duty. See Veterans' Readjustment Benefits Act of 1966, § 2, 38 U.S.C. § 1661(a) (1976). Constitutional challenges similar to that brought here-claims that the Administrator's procedures in denying benefits violated due process-have met with mixed success.
 
 
 21
 Some courts have limited Johnson to its facts: allegations that the statutes underlying veterans' benefits programs are unconstitutional. See Anderson v. Veterans Administration, 559 F.2d 935 (5th Cir. 1977); Mulvaney v. Stetson, 470 F.Supp. 725 (N.D.Ill.1979). Others, however, have applied the Supreme Court's analysis in Johnson more broadly and have held that section 211(a) does not preclude review of the constitutionality of the VA's procedural policies. See Devine v. Cleland, 616 F.2d 1080 (9th Cir. 1980); Moore v. Johnson, 582 F.2d 1228, 1232 (9th Cir. 1978); Plato v. Roudebush, 397 F.Supp. 1295 (D.Md.1975); Taylor v. United States, 385 F.Supp. 1034 (N.D.Ill.1974), vacated and remanded on other grounds, 528 F.2d 60 (7th Cir. 1976). These courts have reasoned that such cases do not necessitate review of a decision "under" any law as defined by the Supreme Court in Johnson-that is, an interpretation or application of a veterans' benefits statute to a particular set of facts. See 415 U.S. at 367, 94 S.Ct. at 1165. Moreover, the two purposes behind section 211(a)'s restriction of review are not threatened by courts' consideration of a single, nonfactual and strictly legal, constitutional issue. See Plato, 397 F.Supp. at 1302-03.
 
 
 22
 This court has agreed that the import of Johnson extends beyond its specific facts and that its analysis is appropriate in determining whether a statute precludes judicial review of constitutional challenges to agency procedures. See Ralpho v. Bell, 569 F.2d 607, 620 (D.C.Cir.1977). There the appellant alleged that the Micronesian Claims Commission's reliance on evidence which appellant had no opportunity to rebut violated due process. The court noted that a contrary, narrow reading of Johnson raises the same questions regarding the constitutionality of finality provisions as concerned the Supreme Court in Johnson:
 
 
 23
 (I)f legislation by Congress purporting to prevent judicial review of the constitutionality of its own actions is itself constitutionally suspect, legislation that frees an administrative agency from judicial scrutiny of its adherence to the dictates of the Constitution must pose grave constitutional questions as well.... If the courts are disabled from requiring administrative officials to act constitutionally, it is difficult to see who would perform that function.
 
 
 24
 569 F.2d at 620. The court therefore followed the Johnson approach. It examined the legislative history of the no-review clause at issue there, and held that the finality provision did not bar the court's consideration of the due process claim.
 
 
 25
 B. Appellants' Irrebuttable Presumption Claim
 
 
 26
 Although indicating that the extremely narrow view of Johnson taken by the Fifth Circuit in Anderson is not acceptable, Ralpho does not dispose of the issue before us. This court has never decided whether Congress intended by section 211(a) to insulate the VA's procedural policies from constitutional review. See Langston v. Johnson, 478 F.2d 915, 916-17 (D.C.Cir.1973).
 
 
 27
 As did the court in Langston, we perceive no reason to resolve this issue in this case. Constitutional questions are not to be decided on hypothetical bases, see Langston, 478 F.2d at 917, and appellants have not supported their complaint that the "birth by another" presumption is irrebuttable. Rather, the essence of appellants' argument is that there was insufficient evidence to justify the Administrator's conclusion that the separations were attributable in part to the fault of the widows, who therefore did not qualify as surviving spouses under the Act.
 
 
 28
 Guidelines contained in the VA's manual are admittedly binding on the Administration's adjudication officers, who make initial determinations regarding claims for death pension benefits. The "birth by another rule" does, therefore, create an evidentiary presumption of fault at the first levels of decisionmaking. Accordingly, the adjudication officers in the Carter and Middleton cases referred to the rule as controlling. See App. at 58, 73. The Board of Veterans' Appeals is not required, however, to follow the dictates of such guidelines. See 38 U.S.C. § 4004(c) (1976) (Board is bound only by regulations of the VA, instructions of the Administrator, and precedent opinions of the chief law officer). Under the statutory provision and regulations relevant here, the Board has the responsibility for determining whether, under the facts of the particular case, the spouse intended to abandon the marital relationship or was in any way responsible for continuation of a separation that was initially the fault of the veteran. Claimants are entitled to a hearing before the Board, see 38 U.S.C. § 4004(a) (1976), at which they may present evidence that the separation was in no respect their fault.
 
 
 29
 Appellants were afforded such hearings here, at which they both testified. With respect to Carter, the Board found that "the facts in this case do not support a finding that the appellant was without fault in the separation from the veteran." App. at 66. Although conceding that the separation was due initially to the misconduct of the veteran, the Board concluded that Carter's
 
 
 30
 later actions in that she had children by another man would have constituted a stumbling block to any possible reconciliation with the veteran and the only reasonable conclusion that can be drawn from her actions is that she had little or no interest in resuming her marital relationship with the veteran.
 
 
 31
 Id. Similarly, in Middleton's case, the Board reasoned that the widow's giving birth to children by another man was "inconsistant (sic) with her marital vows and with a posture of holding herself ready, willing and available to resume a husband and wife relationship with the veteran." App. at 82.
 
 
 32
 The Board's opinions, though far from detailed, indicate that in these cases the Board considered birth by another as determinative of appellants' intentions to terminate their marital relationships. We are unable to infer, however, that birth by another will be conclusive in all cases. As did the court in National Ass'n of Insurance Agents v. Board of Governors of Federal Reserve System, 489 F.2d 1268, 1270 n. (D.C.Cir.1974), we note that the agency's brief indicates that the guideline is only a tentative interpretation that does not foreclose individual challenges either to the validity of the rule in general or to its application in specific cases. We accept the Administrator's explanation that birth by another does not operate as an irrebuttable presumption, but that in these particular cases the Board was unconvinced by appellants' attempts to prove absence of fault.[5]
 
 
 33
 We wish to emphasize, however, that this finding is not made without reservations. The Board's opinions are ambiguous with respect to the weight given the "birth by another rule," and it seems to have come close to abdicating its responsibility to make case-by-case determinations of surviving spouses' entitlements to benefits. Obviously, the Administrator is correct in considering birth by another as probative of fault and of an intent to terminate a marriage. But appellants are also right in arguing that it is only some proof and that other evidence may be relevant to determining fault in individual cases, evidence which the Board is bound to consider. We assume that under some circumstances a widow could demonstrate that her having a child by another man was not indicative of her unwillingness to resume her marital relationship. We also trust that the Board would accept such a showing in appropriate cases.[6]
 
 
 34
 Because the "birth by another" presumption is not irrebuttable, appellants' constitutional challenge is merely a claim that the evidence did not support the Board's finding that the widows were at fault. Appellants can dispute the Board's interpretation of the facts of the cases, but this court is foreclosed by section 211(a) from reviewing such sufficiency of the evidence questions. We therefore find that the court below erred in reaching the merits of appellants' constitutional claims.
 
 
 35
 C. Reviewability of Appellants' Nonconstitutional Claims
 
 
 36
 In addition to their constitutional argument, appellants maintain that the "birth by another rule" is invalid because it is outside the Administrator's statutory authority. The essence of this claim is very similar to that of appellants' irrebuttable presumption contention-that the statute requires case-by-case determinations of fault and does not permit the creation of categories of conduct that operate automatically to exclude spouses from death benefits. The merits of this challenge are likewise nonreviewable under section 211(a), despite a more recent exception to that finality provision, which allows judicial review of allegations that a regulation was promulgated in excess of the Administrator's authority. Initially articulated by the Sixth Circuit in Wayne State University v. Cleland, 590 F.2d 627 (6th Cir. 1978), this exception has been followed in several other courts. See Evergreen State College v. Cleland, 621 F.2d 1002 (9th Cir. 1980); University of Maryland v. Cleland, 621 F.2d 98 (4th Cir. 1980); Merged Area X (Education) v. Cleland, 604 F.2d 1075 (8th Cir. 1979).
 
 
 37
 Applying the Supreme Court's analysis in Johnson, the Sixth Circuit reasoned in Wayne State that the two congressional policies underlying section 211(a) would not be frustrated by permitting judicial inquiry into the Administrator's authority to promulgate regulations. Suits challenging that authority would not open the floodgates to time-consuming litigation over the merits of individual claims. Nor would they involve the courts in scrutinizing the day-to-day operations of the VA and second-guessing the Administrator on complex and technical questions. 590 F.2d at 631-32. The court also noted that an interpretation of section 211(a) to preclude judicial consideration of the limits of the Administrator's authority would raise doubts about the statute's constitutionality similar to those of concern to the Supreme Court in Johnson. Id. at 632. Failing to find the requisite "clear and convincing" evidence that Congress intended to insulate the Administrator from judicial review of challenges to his authority, the Sixth Circuit declined to give section 211(a) a reading that was, in its mind, constitutionally suspect.
 
 
 38
 The Sixth Circuit's approach in Wayne State has not been addressed by this court, and was not considered by the court below, although the decision in Ralpho v. Bell, 569 F.2d 607 (D.C.Cir.1977), again provides some guidance. There the court held that a similar finality provision did not shield the Micronesian Claims Commission from judicial consideration of claims that it had exceeded its statutory authority. The court noted its reluctance to give such a reading to any no-review provision:
 
 
 39
 (C)ourts have assumed it less likely that Congress intended to prohibit review of a claim that the activities of an agency are facially invalid than of "the numerous discretionary, factual, and mixed law-fact determinations" normally underlying an agency's decision-making process. This assumption reflects not only reluctance to license "free-wheeling agencies meting out their own brand of justice," but also a nice appreciation, presumably shared by Congress, that courts of law possess peculiar expertise in statutory interpretation. So judges have generally looked past the language of finality provisions to see how far Congress desired to muzzle the courts and unleash the agency, and will normally disregard "basically lawless" agency action only when clearly instructed to do so.
 
 
 40
 569 F.2d at 622-23 (footnotes omitted).
 
 
 41
 This court has not yet examined section 211(a)'s legislative history with this issue in mind, however, and there is no need for us to do so here. Even assuming that this court would follow the lead of the Sixth Circuit, we have no jurisdiction to conduct the inquiry requested by appellants. The "birth by another rule" is not a regulation, and appellants' contention that it exceeds the Administrator's statutory authority does not, therefore, fall within the Wayne State exception.
 
 
 42
 On its face, the "birth by another rule" appears to be an administrative guideline rather than a regulation: it has never been subjected to the notice and comment requirement and is not contained in the Code of Federal Regulations. In general, however, a rule's form is not determinative of whether or not it should be classified as a regulation. See Guardian Federal Savings & Loan Ass'n v. Federal Savings & Loan Insurance Corp., 589 F.2d 658, 666 (D.C.Cir.1978). The form of the "birth by another rule" is especially inconclusive because at the time the guideline was first set forth in the VA's manual in 1953, the agency was not subject to the strictures of the Administrative Procedure Act. See 5 U.S.C. § 553(a)(2) (1976). The Administrator waived the agency's exemption from the APA in 1972, see 38 C.F.R. § 1.12 (1979), but the procedural demands of that statute were not retroactively applicable to regulations already in existence. See Rodway v. United States Dep't of Agriculture, 514 F.2d 809, 814 (D.C.Cir.1975). Despite the conceded inapplicability of the APA to the "birth by another rule," the case law defining "rule" under that Act is helpful by analogy in determining whether the "birth by another" guideline is the sort of rule that falls within the Wayne State exception to section 211(a).
 
 
 43
 In making that determination, we must look to the guideline's substance and practical effect. See Guardian Federal Savings & Loan Ass'n, 589 F.2d at 666. A substantive or legislative rule, which must conform to the APA's rulemaking procedures, see 5 U.S.C. § 553 (1976), is one that has the force of law and narrowly limits administrative discretion. See Guardian Federal Savings & Loan Ass'n, 589 F.2d at 666-67. An interpretative rule, on the other hand, is one that merely clarifies or explains an existing rule or statute. See id. at 664; Pickus v. United States Board of Parole, 507 F.2d 1107, 1113 (D.C.Cir.1974).[7]
 
 
 44
 The "birth by another rule" simply embodies the Administrator's interpretation of Congress' continuous cohabitation requirement, 38 U.S.C. § 101(3) (1976), and of the VA's regulation mandating that there be "no separation due to the fault of the surviving spouse" and no "intent ... to desert the veteran," 38 C.F.R. § 3.53(a, b) (1979). As discussed supra, the guideline is not binding on the Board of Veterans' Appeals and does not conclusively determine a spouse's eligibility for death benefits. Appellants here were given the opportunity to contest the applicability of the "birth by another rule" to their claims for benefits. They simply failed to convince the Board that they were not partly to blame for the separations from their husbands.
 
 
 45
 Appellants do not ask us to consider a one-time question of statutory interpretation regarding the scope of the Administrator's authority, as was the case in Wayne State. Rather, they ask us to find that the statute's requirement of case-by-case determinations of fault was not met here. If we were to consider this allegation that the Administrator exceeded his authority, we would become inextricably involved in review of the merits of individual claims for death pension benefits. Such an inquiry would necessitate consideration of the Board's findings that, by having children by other men, appellants were at fault for the separations from their husbands and exhibited an intent to terminate their marital relationships. The correctness of those findings is not subject to judicial review. They are typical of the fact-specific questions that Congress left to the expertise of the Administrator and shielded from judicial scrutiny by section 211(a).
 
 III. CONCLUSION
 
 46
 In enacting section 211(a), and then amending it in 1970 in response to this circuit's interpretation, Congress clearly intended to insulate from review the Administrator's disposition of veterans' benefits claims. The two possible exceptions to nonreviewability-for constitutional claims and for challenges to the Administrator's authority to promulgate regulations-are not available here because the "birth by another rule" is neither an irrebuttable presumption nor a binding regulation. Rather, we accept the Administrator's characterization of the rule as an administrative guideline, which was meant to bring about uniform decisionmaking at the initial levels of adjudication and which may be challenged before the Board of Veterans' Appeals. In those cases in which an extramarital birth is not a contributing cause of separation and does not evince an intent on the woman's part to terminate her marital relationship, we trust that the Board will decline to rely on the birth as determinative of fault.
 
 
 47
 In addition to contemplating finality for the decisions of the Administrator, Congress also intended that veterans' benefits legislation be generously construed and, to that end, has continuously enlarged the pool of spouses entitled to death pension benefits. The Administrator ought to determine eligibility for benefits with this spirit in mind and should not allow the admirable goal of uniformity to lead him to follow blindly presumptions that disqualify those deserving of benefits. When a guideline like the "birth by another rule" results in denial of benefits to women such as appellants who have suffered at the hands of abusive husbands, the Administrator must exercise extreme caution. And he should be especially mindful of his awesome responsibility precisely because Congress has shielded his decisions from review by any other body.
 
 
 48
 Affirmed.
 
 
 
 *
 Sitting by designation pursuant to 28 U.S.C. § 293(a)
 
 
 [1]
 See Carter v. Cleland, 472 F.Supp. 985, 987 (D.D.C.1979). Carter had two children, born three and five years after her separation from her husband. Middleton had three children, born five, seven, and ten years following her separation
 
 
 [2]
 Middleton was actually awarded death pension benefits for a time, but they were terminated when the Administrator discovered that three children had been born to her following her separation from her spouse
 
 
 [3]
 In addition to the irrebuttable presumption contention, appellants advanced several equal protection claims, which were rejected below and are not before us on appeal
 
 
 [4]
 E.g., Tracy v. Gleason, 379 F.2d 469 (D.C. Cir. 1967); Thompson v. Gleason, 317 F.2d 901 (D.C. Cir. 1962); Wellman v. Whittier, 259 F.2d 163 (D.C. Cir. 1958)
 
 
 [5]
 The Administrator points out, for example, that appellants never attempted to prove that they had not abandoned their marital relationships or that they had not created obstacles to resumption of those relationships. They merely argued that they were not at fault for the initial separations and that the separations would have continued irrespective of the extramarital births. These showings were not sufficient, argues the Administrator, to prove absence of fault. See Brief for Appellee at 22 n.10
 
 
 [6]
 Appellants argue that the "birth by another rule" must be an irrebuttable presumption because a decision by the Board of Veterans' Appeals contrary to a manual provision leads to revision of the manual. We do not find this inference compelling. The VA's manual revision practice suggests only that the "birth by another rule" is a guideline that is followed in the typical case; it is not inconsistent with our finding that the Board will decline to follow the guideline when an extramarital birth is not indicative of fault
 The Administrator raises a second argument in support of his claim that the "birth by another rule" does not create an irrebuttable presumption: that the presumption may be rebutted by evidence of condonation. Proof that the veteran condoned his wife's having a child by another man requires, however, not only that the veteran forgave or excused her conduct, but also that he was willing to resume cohabitation. See Decision of the Board of Veterans' Appeals, Attachment A to Defendant's Memorandum in Opposition to Plaintiffs' Motion for Partial Summary Judgment, filed Dec. 22, 1978 (condonation not proven although spouse established that veteran had written her indicating that he would never return to her and suggesting that she "find a husband or at least a lover"). The availability of that exception does not refute appellants' irrebuttable presumption claim. The exception is extremely narrow and is not responsive to appellants' contention that the Administrator must consider a variety of elements in determining whether a widow is at fault for a separation. As explained above, however, we find that the "birth by another rule" does not constitute an irrebuttable presumption for a different reason.
 
 
 [7]
 Interpretative rules are not subject to the procedural requirements of the APA. See 5 U.S.C. § 553(b)(A) (1976)