UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Susan Lafond

v.                                    Civil No. 02-26-JD
                                      Opinion No. 2004 DNH 095
City of Manchester,
Robert Baines, Mark Driscoll,
Mark Hobson, Marc Lussier,
and Red Robidas


O R D E R


     Susan Lafond brings federal civil rights claims and related
state law claims against the City of Manchester and city
officials and employees, arising from her dispute with the mayor
about her administration of the city's Welfare Department.  The
defendants move for summary judgment on Lafond's federal claims
and ask the court to decline to exercise supplemental
jurisdiction as to her state law claims in the event they are
entitled to summary judgment on the federal claims.  In response
to the defendants' motion, Lafond voluntarily dismisses her
federal claims against the City of Manchester, Count I, but
objects to summary judgment on her federal claims against Mayor
Robert Baines, Count II, in his individual capacity.

## Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A party opposing a properly supported motion for summary judgment must present competent evidence of record that shows a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). All reasonable inferences and all credibility issues are resolved in favor of the nonmoving party. See id. at 255.

## Background

Lafond was elected to the position of Commissioner of the Welfare Department for the City of Manchester in 1988. She was reelected to consecutive two-year terms until September of 2001 when she was defeated in the primary election. During the time of the events in question in this case, Robert Baines was mayor.

In April of 2000, a caseworker in the Welfare Department, Michael Porter, made allegations against Lafond pertaining to her administration of the Welfare Department, including that she

2

might be committing or encouraging others to commit fraud and that she mismanaged and mistreated Department employees. In response to those allegations, Mayor Baines, Director of Human Resources Mark Hobson, Police Chief Mark Driscoll, and City Solicitor Thomas Clark met to decide what course of action to take. The participants agreed that the Police Department would investigate Porter's allegations against Lafond, which involved issues of fraud and the employment environment at the Department. Director of Human Resources Hobson, however, believed his department should investigate the non-fraud employment issues.

Chief Driscoll provided a summary of the police investigation to Mayor Baines on June 12, 2000. The summary was also provided to the Board of Mayor and Aldermen. The police found no criminal violations. The summary also addressed "management issues" in the Welfare Department, however, and reported negative assessments of Lafond by her caseworkers.

Mayor Baines discussed the summary in an interview with the Union Leader for an article that appeared on June 30, 2000, and confirmed that the police had found no evidence of unlawful activity. On July 6, 2000, Mayor Baines issued a press release that also referred to the police investigation. In the press release, however, Mayor Baines discussed only the personnel issues in the Department and did not mention that the investigation found no evidence of unlawful activity.

The mayor and the Human Resources Department then formulated a plan to deal with personnel issues in the Welfare Department, which included providing management training to Lafond and using a facilitator hired by the city to deal with the problems. Lafond did not agree with the plan and resisted all efforts to impose training and other development activities on her and the Department. In August of 2000, the mayor proposed additional actions to address the personnel issues in the Department.

Lafond states that the mayor did not like her opposition to his plan to provide her with management training. She also expressed her opinion in meetings that it was inappropriate for the city to intervene in the operations of her department.

On September 27, 2000, a meeting was held with the facilitator hired by the city to address personnel problems in the Welfare Department. Lafond stated several times that in her department it was her way or no way. In the course of the meeting, Lafond decided that she no longer had authority in her department because of the actions of the mayor. She left work that day and remained out of work for several months. The parties dispute the reasons for her absence.

In December of 2000, the mayor recommended to the Board of Mayor and Aldermen that Lafond's position as Commissioner of the Welfare Department be changed from an elected to an appointed position. As part of his recommendation, the mayor sent an

4

"Executive Summary" to the Board of Mayor and Aldermen that addressed the issues he perceived in the Welfare Department. The Board decided not to change the elected status of the position.

Also in December of 2000, the city received a note from Lafond's physician that she had been under his care for an illness since September. The physician said that she would be able to return to work on February 2, 2001. In response, the mayor, with input from Security Officer Red Robidas, decided to move Lafond's office from the Welfare Department to City Hall. The parties dispute the reason for the move. Lafond says that she was moved because she told the mayor she would not comply with his action plan for the Department. The defendants contend that the move was to address the concerns of Department employees about Lafond's return and to protect Lafond, based on employees' reports that they thought she might harm herself.

Because of the move, Lafond's return to work on February 2, 2001, did not go smoothly. Although she had been informed that her office was relocated to City Hall, Lafond arrived at the Welfare Department accompanied by her attorney and her son. Three police officers, including defendants Lieutenant Marc Lussier and Security Officer Robidas, were present when the Lafond group arrived. The press was also gathered for the confrontation. The police and Robidas told Lafond that she would be arrested if she tried to enter the Welfare Department

premises.  When Lafond asked if she could retrieve items from her office, Robidas contacted the mayor who authorized her to do that.  Lafond took a hat from her office and left.

After further negotiations with city personnel, Lafond returned to work in April of 2001.  The city allowed her to return to her office at the Welfare Department and did not impose restrictions on her management of the Department.  In May of 2001, Lafond suspended Michael Porter after he reported a Welfare Department client to the Department of Children, Youth and Families without her approval.  Lafond left her position permanently in September of 2001 after she was defeated in the primary.  Her term as Commissioner expired on December 31, 2001.

Porter filed suit in state court, alleging a wrongful termination claim and a claim under 42 U.S.C. § 1983 against Lafond.  In November of 2002, a jury found in Porter's favor and awarded him $100,000 in compensatory damages and $300,000 in punitive damages against Lafond.  The verdict against Lafond was upheld on appeal, <u>Porter v. City of Manchester</u>, 2004 WL 1078139 (N.H. May 14, 2004), but the New Hampshire Supreme Court granted reconsideration in part on June 10, 2004.

The parties dispute the authority of the Welfare Department Commissioner and the mayor.  The Manchester City Charter provides that the mayor, two aldermen-at-large, two school committeemen-at-large, and the commissioner of the welfare department are

elected by the voters of the city.  Charter § 5.09.  The Manchester Code of Ordinances establishes the Department of Welfare, with the Commissioner as the department head, as an elected position.  Code § 32.020.  The Commissioner's duties are to administer public welfare programs and "to perform such other duties as are prescribed by federal, state and local law."  Id.

In contrast, however, the City Charter gives the mayor general administrative and executive powers of the city.  Charter § 2.08.  The authority of department heads as the chief administrative officers of their departments is subject to "the supervisory authority of the mayor as to administration and policy directives of the board of aldermen or policies established by boards and commissions in accordance with section 2.04 of this charter."  Id. § 3.04(a).  The Code of Ordinances also provides that "[t]he Mayor shall have the right to intervene in any dispute between any employee organization and department of the city if he deems it desirable or necessary in the interest of the city."  Code § 33.006.

## Discussion

This case involves a power struggle between Commissioner Lafond and Mayor Baines and the consequences of that struggle. Lafond contends that Baines violated her First Amendment rights by retaliating against her when she disagreed with his decisions

7

and actions which she believed to be a misuse of his authority. His retaliation, Lafond contends, consisted of pressing his "action plan" to address personnel matters in the Department, usurping her authority in the Department, and relocating her office. Lafond also contends that Baines violated her Fourteenth Amendment rights by injuring her reputation and constructively discharging her from her position between September of 2000 and April of 2001. Baines asserts that he is entitled to summary judgment on the merits of Lafond's federal claims, or alternatively, that he is entitled to summary judgment based on qualified immunity.

A. Qualified Immunity

"Qualified immunity is intended to shield public officials 'from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" Fabiano v. Hopkins, 353 F.3d 447, 452-53 (1st Cir. 2003) (quoting Anderson v. Creighton, 483 U.S. 635, 638 (1987)). Therefore, constitutional violations based on reasonable mistakes are not actionable because qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). To assess the defense of qualified immunity the court asks "(1) whether the facts as alleged make out a constitutional violation;

8

(2) whether that right was clearly established; and (3) whether a similarly situated reasonable official would have understood that her conduct violated clearly established law." Fabiano, 352 F.3d at 453.

### 1. First Amendment Claim

In response to the defendants' motion for judgment on the pleadings, the court determined that Lafond stated a violation of her First Amendment right, assuming without deciding that the standard for public employees established in Pickering v. Bd. of Educ., 391 U.S. 563, 568 (1968), would apply to her. Although there continues to be some disagreement about the appropriate standard to apply to an elected official like Lafond, the First Circuit has used a public employee standard in the context of First Amendment claims by an elected official, see Miller v. Town of Hull, 878 F.2d 523, 534 (1st Cir. 1989), and by officials appointed for a fixed term, see Mullin v. Town of Fairhaven, 284 F.3d 31, 37 (1st Cir. 2002).

The First Circuit standard requires that the plaintiff's speech involve matters of public concern, that the strength of the First Amendment interests outweigh the governmental interest in the efficient performance of the governmental agency, and that the plaintiff's protected speech be a substantial or motivating factor in the decision to take adverse actions against her. Id.

9

at 37-38. For the reasons provided in the order denying the defendants' motion for judgment on the pleadings, Lafond alleged a First Amendment violation. In addition, the First Circuit has stated that it was clearly established in 1989, and therefore in 2000 and 2001, that officials "could not be discharged for reasons that infringed on the employees right of freedom of speech."[1] Miller, 878 F.2d at 534.

Mayor Baines is entitled to qualified immunity only if a reasonable official in the circumstances he faced could not have thought that his conduct violated Lafond's First Amendment rights. The record presented for summary judgment provides no evidence of precisely what statements or opinions Lafond expressed that were critical of the mayor.[2] At most, there is

_____

[1]Lafond was not actually discharged from her position, nor could she have been, given her elected status. That significant factual difference between this case and the First Circuit cases addressing the standard for First Amendment retaliation claims brought by public officials might be enough to show that the law related to Lafond's claims was not and is not clearly established. Lafond's own confusion about the appropriate standard in her objection to the defendants' motion for judgment on the pleadings would support that theory. However, as Lafond now relies on the Miller standard, the court will assume without deciding that adverse retaliatory actions, short of discharge, would also implicate First Amendment protection under that standard. See also Colson v. Grohman, 174 F.3d 498, 509-10 (5th Cir. 1999). Cf. Romero-Barcelo v. Hernandez-Agosto, 75 F.3d 23 (1st Cir. 1996).

[2]Lafond did not provide her own affidavit in support of her objection to summary judgment. The part of her deposition she cites to support her protected speech says only that the mayor

10

some evidence that she made it known in meetings that she disagreed with the mayor's interference in the administration of her department and that she expressed her disagreement with his plan that she receive management training. It is not apparent from the record whether the mayor was aware of any statements she may have made at meetings. Therefore, Lafond has not shown that a reasonable official in the mayor's position would necessarily have known that she was engaging in protected speech.

Even if Lafond could show a factual dispute as to whether a reasonable official would have known that she was engaging in protected speech, under the undisputed circumstances, the city's interest in remedying the serious personnel issues in the Welfare Department outweighed any personal or public interest Lafond may have had in expressing her opinion about the mayor's alleged misuse of his authority. The facts in this case show that Lafond was not effectively managing the Welfare Department and that a near crisis of personnel issues existed. The City Charter and Code of Ordinances gave the mayor authority to supervise city departments, although the extent of his authority is disputed. Therefore, a reasonable official in the mayor's position would not have understood that his decisions to intervene in the

did not like her speaking against his opinion that she needed management training. She failed to identify what statements she made that were critical of the mayor to support her claim against him.

11

Department and even to move Lafond's office necessarily violated her First Amendment rights.  Mayor Baines is entitled to qualified immunity as to Lafond's First Amendment claim.

### 2. Fourteenth Amendment Claim

Lafond's second federal claim is that the mayor violated her Fourteenth Amendment rights by injuring her reputation and causing her constructive discharge between September of 2000 and April of 2001.  She alleges that a variety of actions by the mayor injured her reputation.[3]  She does not contend as part of her Fourteenth Amendment claim that the mayor caused her to lose her bid for re-election in September of 2001.[4]  Since the

_____

[3]Because Lafond combines her First and Fourteenth Amendment claims against the mayor in the same count, her allegations are difficult to follow.  She states that the following conduct by the mayor injured her reputation in violation of the Fourteenth Amendment:  the press release that discussed personnel issues but did not mention that the police found no fraud, not maintaining the confidentiality of personnel complaints in her department, interfering with her administration, reporting to the Board of Mayor and Aldermen that Lafond was uncooperative and insubordinate, issuing a report and "Executive Summary" that cast her in a false and negative light, providing the report and "Executive Summary" to the press, and relocating her office.

[4]Such a claim would be unavailing since Lafond would not have had a Fourteenth Amendment property or liberty interest in being re-elected to the position of Commissioner, and the mayor did not prevent her from running for reelection.  See, e.g., Siegert v. Gilley, 500 U.S. 226, 233 (1991); Flinn v. Gordon, 775 F.2d 1551, 1554 (11th Cir. 1985); Emanuele v. Town of Greenville, 143 F. Supp. 2d 325, 333-34 (S.D.N.Y. 2001).

defendants misunderstood Lafond's Fourteenth Amendment claim in their motion for judgment on the pleadings, the court did not consider the merits of Lafond's claim in that context.

The Fourteenth Amendment protects a public employee's reputation "'only where (1) government action threatens [her reputation] (2) with unusually serious harm, (3) as evidenced by the fact that employment (or some other right or status) is affected.'" Daisey v. Anderson, 304 F.3d 148, 155 (1st Cir. 2002) (quoting Beitzell v. Jeffrey, 643 F.2d 870, 878 (1st Cir. 1981)). Constructive discharge may in some circumstances satisfy the requirement that the plaintiff's employment status be affected by the injury to her reputation. See Bailey v. Kirk, 777 F.2d 567, 580 n.18 (10th Cir. 1985); Pierce v. Netzel, 2004 WL 1055959, at *7 (W.D.N.Y. May 10, 2004). To prove constructive discharge, a plaintiff "must show that the abusive working environment became so intolerable that her resignation qualified as a fitting response." Penn. St. Police v. Suders, 2004 WL 1300153 (S. Ct. June 14, 2004) (page references not available); accord Lee-Crespo v. Schering-Plough Del Caribe, Inc., 354 F.3d 34, 45 (1st Cir. 2003).

Lafond neither claims that she resigned nor provides evidence that she resigned her position as Commissioner. Instead, Lafond claims that she left work after the meeting on September 27, 2000, because she was "disabled from work." In her

deposition, Lafond describes taking a leave of absence beginning then because she "fell apart." Apparently, the impetus was her conclusion at the meeting that the mayor and Mark Hobson were encouraging employees in her department to criticize her. She felt that she no longer had authority in her department.

Since Lafond did not resign her position based on intolerable working conditions she has not stated a claim for constructive discharge to support her Fourteenth Amendment claim. In addition, neither the conditions she alleges nor those she describes with record support appear to be so intolerable as to support a constructive discharge claim. Because an injury to reputation alone is not enough to implicate the Fourteenth Amendment, Lafond fails to state a claim in the absence of allegations to support her claim of constructive discharge.

Even if Lafond could allege a sufficient change in her status as a result of statements or actions by the mayor that harmed her reputation, the legal standard applicable to her Fourteenth Amendment claim was not clearly established. See Brady v. Dill, 187 F.3d 104, 116 (1st Cir. 1999). Lafond cites no Supreme Court or First Circuit cases that provide a standard applicable to a Fourteenth Amendment violation in similar circumstances. In the absence of facts alleging a Fourteenth Amendment violation and clearly established federal law governing that claim, the mayor is entitled to qualified immunity on Lafond's Fourteenth Amendment claim.

14

B.   State Law Claims

     In addition to her federal claims against the city and the mayor, Lafond alleged state law claims against all of the defendants.  Lafond has voluntarily dismissed her federal claims against the city, and pursuant to this order, summary judgment is granted in favor of Mayor Baines as to her federal claims against him.  As a result, all of Lafond's federal claims are dismissed.

     The court has supplemental jurisdiction over Lafond's state law claims.  28 U.S.C. § 1367(a).  When the court dismisses the federal claims that were the basis of original jurisdiction well before trial, however, the court may in its discretion decline to exercise supplemental jurisdiction over the state law claims.  § 1367(c).  That is appropriate in this case.  The court declines supplemental jurisdiction and dismisses Lafond's state law claims without prejudice.  See Cannarozzi v. Fiumara, 2004 WL 1205697 at *6 (1st Cir. June 2, 2004).


                              Conclusion

     For the foregoing reasons, the defendants' motion for summary judgment (document no. 34) is granted.  Summary judgment is entered in favor of the City of Manchester and Robert Baines on Counts I and II.  The court declines supplemental jurisdiction

                                 15

as to the remaining claims, Counts III through IX, which are dismissed without prejudice.

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

June 23, 2004

cc:   Donald E. Gardner, Esquire
      Edward M. Kaplan, Esquire

16