**AIR TRANSPORT ASSOCIATION OF AMERICA, Petitioner,**

**v.**

**DEPARTMENT OF TRANSPORTATION; Samuel Skinner, Secretary of Transportation; Federal Aviation Administration; and James B. Busey, Administrator, Respondents.**

**No. 89–1195.**

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 2, 1990.

Decided April 13, 1990.

As Amended April 27, 1990.

---

* Circuit Judge STARR did not participate in this opinion.

Michael S. Sundermeyer, with whom Steven A. Solomon, Washington, D.C., was on the brief, for petitioner.

Bruce G. Forrest, Attorney, Dept. of Justice, with whom Stuart M. Gerson, Asst. Atty. Gen., Anthony J. Steinmeyer and John P. Schnitker, Attorneys, Dept. of Justice, Gregory S. Walden, Chief Counsel, John H. Cassady, Acting Deputy Chief Counsel, Allan H. Horowitz, Washington, D.C., and Cynthia A. Dominick, Attorneys, F.A.A., were on the brief, for respondents.

Robert M. Lichtman, Washington, D.C., for National Air Carrier Ass'n, Inc., et. al., Gary Green and Jerry D. Anker, Washington, D.C., for Air Line Pilots Ass'n, John E. Gillick and Robert Reed Gray, Washington, D.C., for America West Airlines, Inc., John S. Yodice, Washington, D.C., and Donald L. Hardison, for Aircraft Owners and Pilots Ass'n, Alan Armstrong for Albert O. McCauley, were on the joint brief, for intervenors National Air Carrier Ass'n, Inc., et al.

Before MIKVA, HARRY T. EDWARDS and SILBERMAN, Circuit Judges.

Opinion for the Court filed by Circuit Judge HARRY T. EDWARDS.

Dissenting opinion filed by Circuit Judge SILBERMAN.

HARRY T. EDWARDS, Circuit Judge:

The issue in this case is whether respondent governmental agencies (collectively "Federal Aviation Administration" or "FAA") were obliged to engage in notice and comment procedures before promulgating a body of regulations governing the adjudication of administrative civil penalty actions. *See* 53 Fed.Reg. 34,646 (1988) (codified at 14 C.F.R. pt. 13) ("Penalty Rules" or "Rules"). The FAA issued the Penalty Rules pursuant to a temporary enabling statute intended to augment the agency's authority to enforce compliance with aviation safety standards. *See* 49 U.S.C. app. § 1475 (Supp. V 1987). Petitioner Air Transport Association of America ("Air Transport") contends that the FAA's failure to comply with the notice and comment requirements of the Administrative Procedure Act ("APA"), *see* 5 U.S.C. § 553 (1988), renders the Penalty Rules invalid.

The FAA maintains that it was justified in dispensing with notice and comment under the "rules of agency organization, procedure, or practice" and "good cause" exceptions to section 553. *See id.* § 553(b)(A)–(B).

We grant the petition for review. It is well established that the exemption under section 553(b)(A), for "rules of agency organization, procedure, or practice," does *not* apply to agency action that "substantially alter[s] the rights or interests of regulated" parties. *American Hosp. Ass'n v. Bowen,* 834 F.2d 1037, 1041 (D.C.Cir.1987). The Penalty Rules fall outside the scope of the exception because they substantially affect civil penalty defendants' "right to avail [themselves] of an administrative adjudication." *National Motor Freight Traffic Ass'n v. United States,* 268 F.Supp. 90, 96 (D.D.C.1967) (three-judge panel), *aff'd mem.,* 393 U.S. 18, 89 S.Ct. 49, 21 L.Ed.2d 19 (1968). Moreover, because we find that the time constraints of the enabling statute did not impose an insurmountable obstacle to complying with the applicable notice and comment requirements of the APA, we also reject the FAA's reliance on the "good cause" exception under section 553(b)(B). Consequently, we hold that the Penalty Rules are invalid and that the FAA may not initiate new prosecutions until it has complied with the procedural requirements of the APA.

## I. BACKGROUND

In December of 1987, Congress enacted a series of amendments to the Federal Aviation Act relating to civil penalties. *See* Pub.L. No. 100–223, § 204, 101 Stat. 1519 (codified in scattered sections of 49 U.S.C. app.). Among other things, these amendments raised to $10,000 the maximum penalty for a single violation of aviation safety standards, *see* 49 U.S.C. app. § 1471(a)(1) (Supp. V 1987), and established a "demonstration program" authorizing the FAA to prosecute and adjudicate administrative penalty actions involving less than $50,000, 49 U.S.C. app. § 1475 (Supp. V 1987).[1] Under the terms of the demonstration program, the FAA was granted the authority to assess administrative penalties for a two-year period beginning on December 30, 1987, *see id.* § 1475(d)(4), and was to report to Congress on the effectiveness of the program within eighteen months, *see* Pub.L. No. 100–223, § 204(i)(2), 101 Stat. 1521.

Congress' goal in enacting this legislation was to strengthen the enforcement powers of the Federal Aviation Administration. Before the 1987 amendments, the FAA could propose a maximum civil penalty of only $1,000 per violation and had no enforcement authority of its own.[2] When an alleged violator disputed a penalty, the FAA was obliged to refer the case to the United States Attorney's office for prosecution in federal district court; relatively few such cases were prosecuted, however, because of competing work obligations facing U.S. Attorneys. *See* 133 CONG.REC. S15,294 (daily ed. Oct. 28, 1987) (statement of Sen. Wilson); 53 Fed.Reg. 34,646 (1988). Understandably, Congress did not view this as a particularly effective system for assuring compliance with aviation safety standards. By raising the maximum penalty and giving the FAA the power to prosecute penalty actions administratively, Congress sought to "close the holes in the FAA's safety net" and thereby "provide[ ] an incentive for airlines to ensure that [their safety] systems are maintained at the highest of standards." 133 CONG.REC. S15,294 (statement of Sen. Wilson).[3]

---

1. The Administrator, or his delegate, may assess a civil penalty for a violation arising under this chapter or a rule, regulation, or order issued thereunder, upon written notice and finding of violation by the Administrator. *Id.* § 1475(a).

2. However, the FAA did have the authority to assess civil penalties of up to $10,000 for violations of the Hazardous Materials Transportation Act, 49 U.S.C. app. § 1809(a)(1) (1982), and to

prosecute such violations administratively, *see* 49 C.F.R. § 13.16 (1988). The Penalty Rules govern administrative penalty actions under both the Federal Aviation Act and the Hazardous Materials Transportation Act. *See* 49 C.F.R. §§ 13.201(a)(2) (1989).

3. Nonetheless, civil penalty actions may still be brought in federal district court, *see* 49 U.S.C. app. §§ 1471, 1487 (1982), which retains exclu-

At the same time, however, Congress remained attentive to the adjudicative rights of civil penalty defendants. Congress provided that the FAA could assess a civil penalty "only after notice and opportunity for a hearing on the record in accordance with section 554 of [the APA]." 49 U.S.C. app. § 1475(d)(1). As the conference report accompanying section 1475 explained, the express incorporation of the APA's procedural protections was designed to achieve two purposes:

> First, the requirement is intended to advise the FAA of the appropriate level of procedural formality and attention to the rights of those assessed civil penalties under this demonstration program. Secondly, this requirement is intended to provide reasonable assurance to the potential subjects of such civil penalties that their due process rights are not compromised.

H.R. CONF.REP. No. 484, 100th Cong., 1st Sess. 81 (1987).

Approximately nine months after enactment of section 1475, the FAA promulgated the Penalty Rules. *See* 53 Fed.Reg. 34,646 (1988) (codified at 14 C.F.R. pt. 13). Effective immediately upon their issuance, the Penalty Rules established a schedule of civil penalties, including fines of up to $10,-000 for violations of the safety standards of the Federal Aviation Act and related regulations. *See* 14 C.F.R. § 13.16(a)(3) (1989). The Penalty Rules also established a comprehensive adjudicatory scheme providing for formal notice, settlement procedures, discovery, an adversary hearing before an ALJ and an administrative appeal. *See id.* §§ 13.201–13.235. In explaining why it dispensed with prepromulgation notice and comment, the FAA emphasized the procedural character of the Penalty Rules and the time constraints of section 1475. *See* 53 Fed.Reg. 34,646, 34,652–53. The FAA did respond to *post* promulgation comments but declined to make any amendments to the Rules. *See* 54 Fed.Reg. 11,-914 (1989).

Congressional oversight of the section 1475 demonstration program is ongoing. In its report to Congress, the FAA vigorously defended the Penalty Rules. *See* Respondent's Supplemental Addendum at 1–54. Others, including commercial and noncommercial aviators and the Administrative Law Section of the American Bar Association were less enthusiastic, criticizing what they perceived to be the Rules' systematic procedural bias in favor of the FAA. *See* Petitioner's Supplemental Addendum 2–40. In response to the controversy, Congress declined FAA's request to extend section 1475 by two years, and instead extended the statute by only four months. *See* Pub.L. No. 101–236, § 1,103 Stat. 2060 (1989). Supporters of this legislation emphasized that extension "should not be viewed as approval of the FAA's procedures" but only "as a way to preserve the status quo while" Congress "review[s] ... how the major concerns coming from every segment of the aviation community are going to be resolved." 135 CONG.REC. H8917 (daily ed. Nov. 17, 1989) (statement of Rep. Hammerschmidt); *id.* (statement of Rep. Valentine). Indeed, on March 6, 1990—approximately one month after this case was argued—the FAA issued a notice of proposed rulemaking announcing the agency's intention to amend some of the individual Rules that have provoked the most controversy. *See* 55 Fed.Reg. 7980 (1990).

In its petition for review, Air Transport raises two challenges to the Penalty Rules.[4] First, it attacks the procedural adequacy of the Rules, arguing that the FAA was obliged by section 553 of the APA to permit notice and comment *before* the Rules became effective. Second, Air Transport attacks the substantive adequacy of the Rules on the ground that they establish adjudicatory procedures inconsistent with section 554 of the APA. In a previous order, we deferred consideration of the FAA's motion to dismiss the petition on ripeness grounds and directed the par-

---

sive jurisdiction in civil penalty actions involving more than $50,000, *see id.* § 1475(c).

**4.** Air Transport petitioned directly to this court pursuant to 49 U.S.C. app. § 1486 (1982). *See generally Deutsche Lufthansa Aktiengesellschaft v. CAB*, 479 F.2d 912, 915–16 (D.C.Cir.1973).

ties to address this issue in their briefs on the merits. We now find that Air Transport's *procedural* challenge to the Penalty Rules is ripe for review and grant the petition on that ground.[5]

## II. ANALYSIS

### A. *Ripeness*

The FAA contends that, under the ripeness doctrine, *Abbott Labs. v. Gardner*, 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967), this court should defer review of the Penalty Rules until after the agency has had an opportunity to apply the Rules in the concrete settings of administrative adjudications. *Compare Webb v. Department of Health and Human Servs.*, 696 F.2d 101, 107–08 (D.C.Cir.1982) (fact-specific challenge to regulation not ripe before regulation is applied) *with Better Gov't Ass'n v. Department of State*, 780 F.2d 86, 92–93 (D.C.Cir.1986) (purely legal challenge is ripe before application). In other words, the agency claims that Air Transport's preenforcement challenge to the substance of the Penalty Rules should be barred as unripe. We need not reach that issue, however, because Air Transport's petition for review raises *two* issues: (1) the claim that the agency was required to use notice and comment rulemaking in promulgating the Penalty Rules (the "procedural" challenge), and (2) the claim that, whether or not notice and comment was required, certain of the Penalty Rules are unlawful as promulgated (the "substantive" challenge). Because we find merit in the procedural challenge, we need not address whether Air Transport's substantive challenge is ripe.

■ As FAA counsel acknowledged at oral argument, the first of the two claims, the procedural challenge, is clearly ripe for review. In applying the ripeness doctrine, we ask first whether the challenge in question is "purely legal"; if so, it is presumptively reviewable. *See, e.g., Better Gov't Ass'n*, 780 F.2d at 92. Next "we determine whether the court or the agency would benefit from the postponement of review until the agency action or policy in question has assumed either a final or more concrete form." *Id.* Only if these inquiries raise significant "doubts about the fitness of the issue for judicial resolution" do we look to the "hardship" prong of the ripeness test, considering whether the effect of the challenged action on the petitioner's primary conduct outweighs the institutional interests in deferring review. *Consolidated Rail Corp. v. United States*, 896 F.2d 574, 577 (D.C.Cir.1990); *see Askins v. District of Columbia*, 877 F.2d 94, 97–98 (D.C.Cir. 1989).

■ Applying these criteria, we have no trouble concluding that Air Transport's procedural challenge to the Penalty Rules is ripe. The challenge is purely legal; whether the Penalty Rules are subject to the APA's notice and comment procedures can be determined solely from the text, the legislative history and the judicial interpretations of section 553. *See Better Gov't Ass'n*, 780 F.2d at 92. Furthermore, there are no judicial or agency interests militating in favor of deferring review. Neither the application of the Penalty Rules nor even the possible amendment of individual Rules will have any bearing on whether the Rules as a whole were unlawfully promulgated.[6] And until that question is settled, it will provide a possible basis for review in *every* penalty action adjudicated by the FAA.

Thus, "in light of our conclusion that this matter is clearly fit to be heard, we need not consider whether petitioners would suffer any hardship from our postponing its resolution." *Consolidated Rail Corp., supra*, 896 F.2d at 577–78. Accordingly, we

---

5. Consequently, we do not reach petitioner's challenge to the substance of the Penalty Rules. We also express no opinion on whether *that* challenge presents issues ripe for review.

6. The FAA does not contend that the possible expiration of section 1475 affects the ripeness of

the petition for review. No reason exists to believe that Congress will permit the FAA's civil penalty program to lapse; and, in any event, we cannot predicate our jurisdiction on speculations as to what actions Congress may or may not take.

hold that petitioner's procedural challenge is ripe for review.

## B. *The Merits*

Section 553 of the APA obliges an agency to provide notice and an opportunity to comment before promulgating a final rule.[7] No question exists that the Penalty Rules fall within the scope of the APA's rulemaking provisions. *See* 5 U.S.C. § 551(4)–(5) (1988). Nonetheless, the FAA maintains that the Penalty Rules were exempt from the notice and comment requirements for two, independent reasons: first, because they are "rules of agency organization, procedure, or practice," *id.* § 553(b)(A); and second, because the time constraints of section 1475 gave the FAA "good cause" to find that prepromulgation notice and comment would be "impracticable, unnecessary, or contrary to the public interest," *id.* § 553(b)(B). The FAA also argues that its entertainment of *post* promulgation comments cured any violation of section 553.

█ Section 553's notice and comment requirements are essential to the scheme of administrative governance established by the APA. These procedures reflect Congress' "judgment that ... informed administrative decisionmaking require[s] that agency decisions be made only after affording interested persons" an opportunity to communicate their views to the agency. *Chrysler Corp. v. Brown*, 441 U.S. 281, 316, 99 S.Ct. 1705, 1725, 60 L.Ed.2d 208 (1979). Equally important, by mandating "openness, explanation, and participatory democracy" in the rulemaking process, these procedures assure the legitimacy of administrative norms. *Weyerhaeuser Co. v. Costle*, 590 F.2d 1011, 1027 (D.C.Cir. 1978). For these reasons, we have consistently afforded a narrow cast to the exceptions to section 553, permitting an agency to forgo notice and comment only when the subject matter or the circumstances of the rulemaking divest the public of any legitimate stake in influencing the outcome. *See, e.g., Batterton v. Marshall*, 648 F.2d 694, 704 (D.C.Cir.1980); *American Bus Ass'n v. United States*, 627 F.2d 525, 528 (D.C.Cir.1980). In the instant case, because the Penalty Rules substantially affected civil penalty defendants' right to avail themselves of an administrative adjudication, we cannot accept the FAA's contention that the Rules could be promulgated without notice and comment.

### 1. *"Rules of Agency Organization, Procedure, or Practice"*

The FAA argues that the Penalty Rules are exempt as "rules of agency organization, procedure, or practice" because they establish "procedures" for adjudicating civil penalty actions. According to the FAA, it would have been obliged to permit public participation in the rulemaking process only if the Penalty Rules affected aviators' "substantive" obligations under the Federal Aviation Act. We find this analysis unpersuasive.

Our cases construing section 553(b)(A) have long emphasized that a rule does not fall within the scope of the exception mere-

---

7. Section 553 provides in relevant part:

(b) General notice of proposed rule making shall be published in the Federal Register, unless persons subject thereto are named and either personally served or otherwise have actual notice thereof in accordance with law. The notice shall include—

(1) a statement of the time, place, and nature of public rule making proceedings;

(2) reference to the legal authority under which the rule is proposed; and

(3) either the terms or substance of the proposed rule or a description of the subjects and issues involved.

Except when notice or hearing is required by statute, this subsection does not apply—

(A) to interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice; or

(B) when the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefore in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest.

(c) After notice required by this section, the agency shall give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity for oral presentation. After consideration of the relevant matter presented, the agency shall incorporate in the rules adopted a concise general statement of their basis and purpose.

ly because it is capable of bearing the label "procedural." *See, e.g., Reeder v. FCC,* 865 F.2d 1298 (D.C.Cir.1989) (*per curiam*). In *Reeder,* we examined a body of rules governing the submission of "counterproposals" to the allotment of FM radio frequencies by the Federal Communications Commission. Although the rules purported merely to define the procedures for the submission of counterproposals, we recognized that these procedures in fact foreclosed agency consideration of counterproposals based on the upgrading of existing FM stations. *See id.* at 1305. Because the agency previously *did* permit applicants to submit counterproposals based on upgrading plans, we held that the agency should have engaged in notice and comment before depriving applicants' of this right. *See id.; see also Batterton,* 648 F.2d at 707–08 (procedures affecting entitlement to federal grants not exempt); *Pickus v. United States Bd. of Parole,* 507 F.2d 1107, 1113 (D.C.Cir.1974) (procedures affecting parole determinations).

Rather than focus on whether a particular rule is "procedural" or "substantive," these decisions employ a functional analysis. Section 553(b)(A) has been described as essentially a "housekeeping" measure, *Chrysler Corp. v. Brown,* 441 U.S. 281, 310, 99 S.Ct. 1705, 1721, 60 L.Ed.2d 208 (1979), "[t]he distinctive purpose of ... [which] is to ensure 'that agencies retain latitude in organizing their *internal* operations,' " *American Hosp. Ass'n v. Bowen,* 834 F.2d 1037, 1047 (D.C.Cir.1987) (quoting *Batterton,* 648 F.2d at 707) (emphasis added). Where nominally "procedural" rules "encode[ ] a substantive value judgment" or "substantially alter the rights or interests of regulated" parties, however, the rules must be preceded by notice and comment. *Id.* at 1047, 1041.

 The Penalty Rules fall outside the scope of section 553(b)(A) because they substantially affect a civil penalty defen-

dant's *right to an administrative adjudication.* Under both the due process clause, *see Lipke v. Lederer,* 259 U.S. 557, 562, 42 S.Ct. 549, 551, 66 L.Ed. 1061 (1922), and the APA, *see* 5 U.S.C. §§ 554, 556 (1988), a party has a right to notice and a hearing before being forced to pay a monetary penalty. Congress expressly directed the FAA to incorporate these rights into its civil penalty program. *See* 49 U.S.C. app. § 1475(d)(1); H.R. CONF.REP. No. 484, 100th Cong., 1st Sess. 81 (1987). In implementing this mandate, the FAA made discretionary—indeed, in many cases, highly contentious—choices concerning what process civil penalty defendants are due. Each one of these choices "encode[d] a substantive value judgment," *American Hosp. Ass'n,* 834 F.2d at 1047, on the appropriate balance between a defendant's *rights* to adjudicatory procedures and the agency's interest in efficient prosecution.[8] The FAA was no less obliged to engage in notice and comment before taking action affecting these adjudicatory rights than it would have been had it taken action affecting aviators' "substantive" obligations under the Federal Aviation Act. *See, e.g., National Ass'n v. Schweiker,* 690 F.2d 932, 949 (D.C.Cir.1982) (notice and comment required for rules "eliminating the qualified right" to present reimbursement claims to agency secretary rather than intermediary), *cert. denied,* 459 U.S. 1205, 103 S.Ct. 1193, 75 L.Ed.2d 438 (1983); *Brown Express, Inc. v. United States,* 607 F.2d 695, 702–03 (5th Cir.1979) (notice and comment required for rules eliminating notice of award of temporary carrier licenses).

Indeed, this is the teaching of the seminal decision in *National Motor Freight Traffic Ass'n v. United States,* 268 F.Supp. 90 (D.D.C.1967) (three-judge panel), *aff'd mem.,* 393 U.S. 18, 89 S.Ct. 49, 21 L.Ed.2d 19 (1968). In *National Motor Freight,* the court[9] reviewed a body of Interstate Com-

---

**8.** In noting that the FAA made discretionary choices determining the *specific form* of civil penalty defendants' adjudicatory rights, we do not, of course, suggest that the choices made *violated* those rights. Section 553 stands for the proposition that interested parties have a right

to influence agency decisionmaking even when the decisions made are substantively lawful.

**9.** On the three-judge panel were then Circuit Judge Burger, Circuit Judge McGowan and Dis-

merce Commission rules establishing a scheme for the administrative adjudication of carrier overcharge claims. Rejecting the claim that the rules merely established procedures for implementing substantive statutory rights, the court held that the agency's decision to establish "[a] right to avail oneself of an administrative adjudication" was itself one that the APA required to be open to public participation. *Id.* at 95–96. *National Motor Freight* was summarily affirmed by the Supreme Court, and remains binding precedent. *See* 1 K. DAVIS, ADMINISTRATIVE LAW TREATISE § 6.29, at 589 (2d ed. 1978) (describing *National Motor Freight* as "[t]he most authoritative decision" on the scope of section 553(b)(A)). In our view, it is controlling in the case before us.

The cases cited by the FAA do not suggest a contrary conclusion. The FAA puts its primary emphasis on *American Hospital Association.* At issue in that case were a series of agency directives and manuals defining the "enforcement strategy" of review boards assigned to investigate Medicare reimbursement claims by hospitals. *See* 834 F.2d at 1049–52. We held that these materials were covered by section 553(b)(A) because we recognized that the public has no legitimate interest in influencing an agency's "discretionary deployment of enforcement resources," *id.* at 1057 n. 4—a classic "internal" matter, essential to how an agency constitutes itself, *cf. Heckler v. Chaney,* 470 U.S. 821, 831–32, 105 S.Ct. 1649, 1655–56, 84 L.Ed.2d 714 (1985). Nothing in *American Hospital As-*

*sociation* detracts from the principle that the public *does* have a legitimate interest in participating in agency decisions affecting statutory and constitutional rights "to avail oneself of an administrative adjudication." *National Motor Freight,* 268 F.Supp. at 96.[10]

Also inapposite are various decisions in which we have applied section 553(b)(A) to rules that regulate such matters as the timing of applications for benefits, *see, e.g., Lamoille Valley R. Co. v. ICC,* 711 F.2d 295, 328 (D.C.Cir.1983); *Ranger v. FCC,* 294 F.2d 240, 243–44 (D.C.Cir.1961), or the timing of the agency's processing of such applications, *Neighborhood TV Co., Inc. v. FCC,* 742 F.2d 629, 637–38 (D.C.Cir.1984). The rules at issue in these cases did affect "the manner in which the parties present themselves or their viewpoints to the agency," *Batterton,* 648 F.2d at 707, but they did *not* affect any component of a party's statutory or constitutional right to avail himself of an administrative adjudication. They were all cases, in short, in which "the need for public participation" in the rulemaking process was "too small to warrant it." *Id.* at 704.[11] The Penalty Rules, in contrast, affect the entire range of adjudicatory rights guaranteed by the due process clause, the APA and section 1475(d)(1) —matters far too important to be withdrawn from public deliberation. *See National Motor Freight,* 268 F.Supp. at 96–97.[12]

In criticizing our reliance on *National Motor Freight,* the dissent argues that

trict Judge Sirica. Judge McGowan wrote the opinion for the court.

**10.** Indeed, in *American Hospital Association,* the bulk "of regulations ... regarding [agency review board] *procedures* " *had* been subject to notice and comment rulemaking and were therefore not being challenged. 834 F.2d at 1043 (emphasis added).

**11.** In characterizing the principle underlying these decisions, we have sometimes spoken broadly, describing section 553(b)(A) as exempting the "technical regulation of the form of agency action and proceedings." *Pickus,* 507 F.2d at 1113. But we have never suggested, much less held, that section 553(b)(A) exempts measures that regulate the form of agency proceedings when these measures also affect a stat-

utory or constitutional right to administrative adjudication. *Cf. id.* ("category" of "technical regulation of the form of agency action and proceedings" does not "include any action which goes beyond formality and substantially affects the rights of those over whom the agency exercises authority").

**12.** Of course, not *all* of the procedures established by the Penalty Rules touch on civil penalty defendants' rights to adjudication. We reject the FAA's contention, however, that we should identify *which* individual Rules fall within the scope of section 553(b)(A) and invalidate only those. At a minimum, the FAA was obliged to engage in notice and comment before promulgating the Rules implementing the APA's procedures for formal adjudication, *see* 5 U.S.C. §§ 554, 556–557 (1988), and deprived of these

agency action that is expressly exempt under the APA is not subject to notice and comment rulemaking simply because it has a "substantial impact" on regulated parties. We agree with this assertion, but it is irrelevant because it begs the question whether the Penalty Rules are included within the exemption of section 553(b)(A). We rely on *National Motor Freight* not to show that the Penalty Rules have a "substantial impact" on aviators, but to show that rules affecting *the right to avail oneself of an administrative adjudication* are *not* within the express terms of section 553(b)(A). *No* case in this circuit has ever suggested otherwise.

The dissent also contends that we have "obliterated" the distinction between substance and procedure. But, as the case law clearly illustrates, there is no such "distinction" to obliterate for purposes of section 553(b)(A). The dissent refuses to come to terms with the precedent characterizing this exception to notice and comment rulemaking as a mere "housekeeping" measure, *Brown*, 441 U.S. at 310, 99 S.Ct. at 1721, applicable to rules " 'organizing [agencies'] *internal* operations.' " *American Hosp. Ass'n*, 834 F.2d at 1047 (quoting *Batterton*, 648 F.2d at 707) (emphasis added). The dissent's infusion of a rigid "procedure"—"substance" distinction is not only inconsistent with our precedent, *see, e.g., Reeder*, 865 F.2d at 1305; *Batterton*, 648 F.2d at 707–08, but is also inconsistent with the statutory text. Section 553(b)(A) does not exempt "rules of procedure" *per se*, but rather "rules of agency organization, procedure, or practice." The dis-

sent's exclusive focus on the word "procedure" thus violates the well established principle of construction "that 'words grouped in a list should be given related meaning.' " *Dole v. United Steelworkers*, —— U.S. ——, 110 S.Ct. 929, 935, 108 L.Ed.2d 23 (1990) (quoting *Massachusetts v. Morash*, —— U.S. ——, 109 S.Ct. 1668, 1673, 104 L.Ed.2d 98 (1989)).[13]

In sum, the FAA's contention that it did not affect the "substantive" obligations of aviators under the Federal Aviation Act is irrelevant. "The characterizations 'substantive' and 'procedural'—no more here than elsewhere in the law—do not guide inexorably to the right result, nor do they really advance the inquiry very far." *National Motor Freight*, 268 F.Supp. at 96. In using the terms "rules of agency organization, procedure, or practice," Congress intended to distinguish not between rules affecting different *classes of rights* —"substantive" and "procedural"—but rather to distinguish between rules affecting different *subject matters* —"the rights or interests of regulated" parties, *American Hosp. Ass'n*, 834 F.2d at 1041, and agencies' " 'internal operations,' " *id.* at 1047 (quoting *Batterton*, 648 F.2d at 707). Because the Penalty Rules substantially affect civil penalty defendants' "right to avail [themselves] of an administrative adjudication," members of the aviation community had a legitimate interest in participating in the rulemaking process. *National Motor Freight*, 268 F.Supp. at 96.

### 2. *"Good Cause"*

 We also disagree that the two-year duration of section 1475's demonstra-

---

particular Rules, the FAA's penalty program clearly cannot function. Moreover, the FAA promulgated the Penalty Rules as an integrated whole. Because identifying the combination of procedures that best reconciles the needs of the agency and the rights of civil penalty defendants involves discretionary lawmaking powers delegated by Congress *to the FAA*, it would be inappropriate for us selectively to invalidate individual Rules while leaving the FAA's adjudicatory scheme intact. *Cf. SEC v. Chenery Corp.*, 332 U.S. 194, 196, 67 S.Ct. 1575, 1577, 91 L.Ed. 1995 (1947).

**13.** The dissent's suggestion that we have disregarded *Vermont Yankee Nuclear Power Corp.*

*v. NRDC*, 435 U.S. 519, 98 S.Ct. 1197, 55 L.Ed.2d 460 (1978), raises a false issue, for it assumes the answer to the question posed. In *Vermont Yankee*, the Supreme Court held that reviewing courts cannot impose on an agency procedural requirements not found in the APA. *See id.* at 549, 98 S.Ct. at 1214. Section 553 of the APA *expressly* directs agencies to engage in notice and comment rulemaking; the issue in this case is whether the FAA had any ground to disregard this procedural obligation. Because the dissent's use of *Vermont Yankee presupposes*, incorrectly, in our view, that the Penalty Rules fall within the exception in section 553(b)(A), the dissent's reliance on the case adds nothing to the position sought to be advanced.

tion program furnished the FAA with "good cause" to dispense with notice and comment procedures. Like the other exceptions, the good cause exception is to "be narrowly construed and only reluctantly countenanced." *New Jersey v. EPA*, 626 F.2d 1038, 1045 (D.C.Cir.1980). In particular, we have explained that statutory time limits do *not* ordinarily excuse compliance with the APA's procedural requirements. In *New Jersey v. EPA*, we reviewed a set of regulations issued pursuant to a six-month time limit. Adopting the reasoning of two of our sister circuits, we held that the statutory deadline did not constitute good cause to forgo notice and comment absent " 'any express indication' " by Congress to this effect. *Id.* at 1043 (quoting *Sharon Steel Corp. v. EPA*, 597 F.2d 377, 380 (3d Cir.1979)). *See also Council of Southern Mountains, Inc. v. Donovan*, 653 F.2d 573, 581 (D.C.Cir.1981) (" '[T]he mere existence of deadlines for agency action ... [can] not in itself constitute good cause for a § 553(b)(B) exception.' ") (quoting *United States Steel Corp. v. United States EPA*, 595 F.2d 207, 213 (5th Cir.), *reh'g granted in part on other grounds*, 598 F.2d 915 (5th Cir.1979)).

*New Jersey v. EPA* is controlling here. Congress did not express an intention to relieve the FAA of the legal obligation to engage in notice and comment procedures before promulgation of the Penalty Rules. Indeed, section 1475 did not even *set* a formal deadline for implementation of the agency's authority to assess civil penalties. It is true that the two-year duration of the "demonstration program," along with the associated eighteen-month reporting deadline, *see* Pub.L. No. 100–223, § 204(i)(2), 101 Stat. 1521, encouraged the FAA to act with reasonable dispatch. But we believe that the FAA, using expedited notice and comment procedures if necessary, could have realized this objective short of disregarding its obligations under the APA. *Cf. Phillips Petroleum Co. v. United States EPA*, 803 F.2d 545, 559 (10th Cir.1986) (noting broad discretion of agency to determine length of comment period).[14]

Finally, the FAA is foreclosed from relying on the good cause exception by its own delay in promulgating the Penalty Rules. The agency waited almost nine months before taking action to implement its authority under section 1475. At oral argument, counsel for the FAA conceded that the delay was largely a product of the agency's decision to attend to other obligations. We are hardly in a position to second guess the FAA's choices in determining institutional priorities. But insofar as the FAA's own failure to act materially contributed to its perceived deadline pressure, the agency cannot now invoke the need for expeditious action as "good cause" to avoid the obligations of section 553(b). *See National Ass'n of Farmworkers v. Marshall*, 628 F.2d 604, 622 (D.C.Cir.1980).

3. *Postpromulgation Comment*

■ Finally, we reject the FAA's contention that its response to comments *after* promulgation of the Penalty Rules cured any noncompliance with section 553. Section 553 provides "that notice and an opportunity for comment are to *precede* rulemaking." *New Jersey v. EPA*, 626 F.2d at 1050. We strictly enforce this requirement because we recognize that an agency is not likely to be receptive to suggested changes once the agency "put[s] its credibility on the line in the form of 'final' rules. People naturally tend to be more close-minded and defensive once they have made a 'final' determination." *National Tour Brokers Ass'n v. United States*, 591 F.2d 896, 902 (D.C.Cir.1978). Although we have suggested that there might be circumstances in which "defects in an original notice [could] be cured by an adequate later notice" and opportunity to comment, we have emphasized that we could reach such a conclusion only upon a compelling showing that "the agency's mind remain[ed] open enough at the later stage." *McLouth Steel Prods. Corp. v. Thomas*, 838 F.2d 1317, 1323 (D.C.Cir.1988); *see Reeder*, 865 F.2d at 1304; *see also New Jersey v. EPA*, 626 F.2d at 1050 (noting "the presumption that *post hoc*

---

14. We note in this regard that the FAA has adopted an accelerated twenty-four-day comment period in its pending notice of proposed rulemaking. *See* 55 Fed.Reg. 7980.

comment was not contemplated by the APA and is generally not consonant with it").

The FAA has not come close to overcoming the presumption of closed-mindedness in this case. It made no changes in the Penalty Rules in response to public comments. Nor did the language of FAA's published replies suggest that the agency had afforded the comments particularly searching consideration. *See McLouth Steel Prods. Corp.*, 838 F.2d at 1323.

Under the circumstances, then, we cannot discount the possibility that, had the FAA entertained comments *before* the Penalty Rules became final, it "might have decided [on] a different accommodation" of the agency's enforcement needs and civil penalty defendants' procedural rights. *Brown*, 441 U.S. at 316, 99 S.Ct. at 1725. Indeed, if the FAA had entertained prepromulgation comments and taken those comments seriously, it might very well have averted the public outcry underlying the agency's pending notice of proposed rulemaking.

### C. *Remedy*

 Having determined that the FAA promulgated the Penalty Rules in violation of the APA's notice and comment requirements, we must next consider the appropriate remedy. Ordinarily, when agency rules have been invalidated, the agency may not rely on those rules until they have been repromulgated in accordance with the APA. *See, e.g., Reeder*, 865 F.2d at 1306. We find such a disposition appropriate in this case; therefore, we hold that the FAA may not initiate new prosecutions under the Penalty Rules unless and until they are repromulgated. Insofar as the FAA's pending notice of proposed rulemaking seeks public comment on the individual Rules that the agency intends to amend, the agency may rely on the outcome of that rulemaking as a partial fulfillment of this mandate.

This disposition, however, does not address the status of pending civil penalty actions. Counsel informed us that as of the date on which this case was argued, the

FAA had initiated some 4,800 prosecutions, only a handful of which had progressed to the stage of an administrative hearing. The FAA remains free, of course, to refer these cases to the United States Attorney for prosecution in district court. *See* 49 U.S.C. app. §§ 1471(a)(1), 1487(a), (b). Nonetheless, we remain sympathetic to the FAA's concern that leaving the agency with solely this option would oblige it to forfeit the considerable investment it has made in prosecuting these cases and would frustrate Congress' intent to tighten enforcement by providing an administrative forum for their adjudication.

So long as it "act[s] within the bounds of the statute and without intruding upon the administrative province," a court sitting in review of an administrative agency "may adjust its relief to the exigencies of the case in accordance with the equitable principles governing judicial action." *Ford Motor Co. v. NLRB*, 305 U.S. 364, 373, 59 S.Ct. 301, 307, 83 L.Ed. 221 (1939); *accord Indiana & Michigan Elec. Co. v. FPC*, 502 F.2d 336, 346 (D.C.Cir.1974), *cert. denied*, 420 U.S. 946, 95 S.Ct. 1326, 43 L.Ed.2d 424 (1975). In the past, we have employed our broad remedial powers to minimize disruption of congressional and administrative objectives when invalidating a rule promulgated in violation of the APA's notice and comment procedures. *See, e.g., Rodway v. United States Dep't of Agriculture*, 514 F.2d 809, 817 (D.C.Cir.1975) (permitting agency to continue reliance on procedurally defective regulations implementing food stamp program pending new rulemaking).

We believe that the exercise of our equitable remedial powers is appropriate in this case as well. Consequently, although the FAA may not initiate *new* prosecutions under the Penalty Rules, we hold that the FAA is free to hold *pending* actions in abeyance while it engages in further rulemaking. If and when the FAA promulgates a final rule for adjudication of administrative penalty actions, it may then resume prosecution of these cases. A defendant in such a case will also be free to raise the defense that the FAA could not have successfully prosecuted him but for the

agency's reliance on some aspect of the Penalty Rules abandoned in the new scheme. Finally, we take no position on whether parties whose cases have reached a *final* determination under the Penalty Rules may now raise the procedural invalidity of the Rules as a ground for seeking review.

## III. CONCLUSION

An agency may dispense with the notice and comment requirements of section 553 "only where the need for public participation is overcome by good cause to suspend it, or where the need is too small to warrant it." *Batterton*, 648 F.2d at 704 (footnote omitted). Neither of these conditions obtains in this case. The FAA did not have good cause to forgo notice and comment procedures, for nothing in section 1475 either excused or mandated noncompliance with section 553. Nor was this a case in which the need for public participation was "too small to warrant it"; civil penalty defendants have a legitimate interest in influencing agency action affecting their statutory and constitutional "right to avail [themselves] of an administrative adjudication." *National Motor Freight*, 268 F.Supp. at 96. We therefore grant the petition for review and order the FAA not to initiate further prosecutions under the Penalty Rules until the agency has engaged in further rulemaking in accord with section 553. Nonetheless, pursuant to our remedial powers, we hold that the FAA is free to hold pending cases in abeyance and resume prosecution upon the repromulgation of a scheme for adjudicating administrative civil penalty actions under section 1475.

*It is so ordered.*

SILBERMAN, Circuit Judge, dissenting:

I quite agree with the majority that the question whether the FAA was obliged to issue the proposed rules for notice and comment is ripe,[1] but I disagree with the majority's answer to the question because I think the rules fall, by ample measure, within the "procedural" exemption of section 553(b)(A), which exempts from notice and comment "rules of agency organization, procedure, or practice." To be sure, the rules in this case could as well be described as rules of "practice" (covering the practice of the parties and attorneys before the FAA) and also in some respects rules of "agency organization" (dealing with the interrelationship between the administrative law judges and the Administrator). I use the term "procedure" here to cover all three concepts.

Lines between substance and procedure in various areas of the law are difficult to draw and therefore often perplex scholars and judges. But Congress, when it passed the Administrative Procedure Act, made that difference critical, and we are therefore obliged to implement a viable distinction between "procedural" rules and those that are substantive. *See, e.g., Chrysler Corp. v. Brown*, 441 U.S. 281, 301, 99 S.Ct. 1705, 1717, 60 L.Ed.2d 208 (1979) ("The central distinction among agency regulations found in the APA is between 'substantive rules' on the one hand and 'interpretive rules, general statements of policy, or rules of agency organization, procedure, or practice' on the other."); *Reeder v. FCC*, 865 F.2d 1298, 1305 (D.C.Cir.1989); *American Hospital Ass'n v. Bowen*, 834 F.2d 1037, 1047 (D.C.Cir.1987); *Neighborhood TV Co., Inc. v. FCC*, 742 F.2d 629, 636–37 (D.C.Cir.1984); *Lamoille Valley R.R. Co. v. ICC*, 711 F.2d 295, 328 (D.C.Cir.1983); *Batterton v. Marshall*, 648 F.2d 694, 707 (D.C.Cir.1980). The majority opinion, in effect, abandons the effort, finding in *Reeder, American Hospital Ass'n,* and *Batterton* a disposition to challenge the Supreme Court's *Chrysler Corp.* analysis that I do not discern in those cases—or in any other. Accordingly, it will be impossible for any agency general counsel, in the future, safely to advise agency heads that a given set of proposed rules are procedural and do not have to be published for comment. Therefore, I dissent.

---

1. Although I do not believe petitioner's challenge to the fairness of the rules is ripe, there is no point in discussing that issue in light of the majority's disposition.

If we assume a spectrum of rules running from the most substantive to the most procedural, I would describe the former as those that regulate "primary conduct" in the way that term is used in *Toilet Goods Ass'n, Inc. v. Gardner*, 387 U.S. 158, 164, 87 S.Ct. 1520, 1524, 18 L.Ed.2d 697 (1967), and the latter are those furthest away from primary conduct. In other words, if a given regulation purports to direct, control, or condition the behavior of those institutions or individuals subject to regulation by the authorizing statute it is not procedural, it is substantive. At the other end of the spectrum are those rules, such as the ones before us in this case, which deal with enforcement or adjudication of claims of violations of the substantive norm but which do not *purport* to affect the substantive norm. These kinds of rules are, in my view, clearly procedural.

Rules are no less procedural because they are thought to be important or affect outcomes. Congress did not state, when it passed the APA, that all but insignificant rules must be put out for notice and comment.[2] And to say, as does the majority, that the rules are covered by section 553's notice and comment requirement because they "substantially affect a civil defendant's *right to an administrative adjudication*," Maj. Op. at 378 (emphasis in original), is, I respectfully submit, circular reasoning. It assumes the conclusion by describing petitioner's interest in the agency's adjudicatory procedures as if it were a substantive right. It also implicitly suggests that petitioner is correct on the merits in claiming the agency's adjudicatory procedures are illegal. In determining whether particular rules must be put out for comment, surely the APA does not contemplate that a reviewing court would be influenced by whether or not it thought procedural rules were illegal. If, as argued by petitioner, the rules violate its rather ill-defined notion of administrative

due process (petitioner's primary claim on the merits seems to be that the rules offend the views of the American Bar Association) or even constitutional due process, that is an entirely separate matter which can be raised in a concrete setting.

Admittedly, not all our cases fit precisely along the continuum I described above. When an agency, rather than publishing rules which define a substantive norm to which regulated groups must conform or which flesh out enforcement procedures to effectuate such compliance, instead adopts rules dealing with the award of *benefits*, a slightly different but similar analysis is used to distinguish substantive from procedural rules. Sometimes the Government's prospective award of benefits is actually designed, in part, to affect primary conduct—such as the standards used to determine whether to renew a broadcast license or the criteria employed to determine eligibility for unemployment insurance. But typically, benefits are bestowed in accordance with preexisting qualifications or status. In those circumstances, it cannot be said that the rules seek to condition primary conduct. We still think of such rules as substantive because defining eligibility for a benefit program is the very essence of the program. It is in this context that in *Batterton v. Marshall*, 648 F.2d 694 (D.C. Cir.1980), we said that substantive rules are those that affect the "rights and interests of parties." *See id.* at 707. In *Batterton*, Maryland challenged the Department of Labor's adoption of a new method of calculating local unemployment rates, which in turn determined the amount of CETA job training funds each state and locality would receive. We categorized those new rules as substantive because they altered the criteria by which Government benefits would be distributed rather than simply change the manner in which claimants for benefits communicated to the

---

**2.** The majority erroneously quotes *Chrysler Corp.* as referring to the procedural exemption as a "mere 'housekeeping' measure." *See* Maj.Op. at 378. In fact *Chrysler Corp.* characterized *5 U.S.C. § 301*—the provision authorizing executive department heads to prescribe regulations for the governing of their depart-

ments—and not the APA procedural exemption as a "housekeeping statute." *See Chrysler Corp.*, 441 U.S. at 309–10, 99 S.Ct. at 1721–22. The Court then compared § 301 to the APA exemption, indicating that the procedural exemption *at least* includes day to day internal government business.

agency the nature of their substantive claim. *See id.* at 707–08. Similarly, in *Reeder v. FCC,* 865 F.2d 1298 (D.C.Cir. 1989), a radio station objected to the FCC's adoption of rules governing counterproposals to the agency's allotment of new FM channels throughout the United States. We decided that the procedural exemption was inapplicable because the FCC had altered its decisionmaking criteria for new station allotments. *See id.* at 1304–05.

In contrast, in *Neighborhood TV Co., Inc v. FCC,* 742 F.2d 629 (D.C.Cir.1984), we concluded that FCC rules that froze contested applications for "translators" (devices which amplify and rebroadcast television signals) and then processed rural applications before urban ones were procedural because the rules did not alter the standards by which those applications would be judged. *See id.* at 637–38. We also pointed out that our earlier decisions in *Kessler v. FCC,* 326 F.2d 673 (D.C.Cir. 1963), and *Ranger v. FCC,* 294 F.2d 240 (D.C.Cir.1961), found the challenged rules exempted from the notice and comment requirements precisely because the FCC rules did not regulate the radio stations' right to broadcast its signals at a particular station. *See Neighborhood TV,* 742 F.2d at 638.

Of course, procedure impacts on outcomes and thus can virtually always be described as affecting substance, but to pursue that line of analysis results in the obliteration of the distinction that Congress demanded. We avoided that snare only recently in *American Hosp. Ass'n v. Bowen,* 834 F.2d 1037, 1047 (D.C.Cir.1987), where we held, over a strong dissent in many respects redolent of the majority opinion here, that HHS rules that set forth the enforcement priorities for peer review organizations (acting as agents to ensure medically reasonable and necessary hospital health care), as well as some adjudicatory procedures similar to those contained in the rules before us, did not have to be published for comment. Although it was argued that the procedures would affect hospital behavior by discouraging activity in the zone of an enforcement priority, we

nevertheless held that the rules did not "encode[ ] a substantive value judgment or put[ ] a stamp of approval or disapproval on a given type of behavior." *Id.* at 1047. We recognized that hospital costs would be affected by the enforcement scheme, but that was not enough to bring the rules out of the procedural safe harbor. *See id.* at 1051. The case at bar involves rules that are, *a fortiori,* procedural because, unlike in *American Hospital Ass'n,* it is not even argued here that primary behavior—the safety efforts of the airlines—is even affected by the adjudicatory rules.

Deviating from our previous and recent emphasis on primary conduct, the majority asserts that a proposed rule that *allegedly* infringes on "the right to avail oneself of an administrative adjudication" is "substantive." *See* Maj. Op. at 377. But the quoted language comes from an old and now discredited district court case, *National Motor Freight Traffic Ass'n v. United States,* 268 F.Supp. 90 (D.D.C.1967), *aff'd mem.,* 393 U.S. 18, 89 S.Ct. 49, 21 L.Ed.2d 19 (1968). The Supreme Court summarily affirmed the judgment of the district court in *National Motor Freight,* and therefore we are not bound by the district court's reasoning. *See Anderson v. Celebrezze,* 460 U.S. 780, 785 n. 5, 103 S.Ct. 1564, 1568 n. 5, 75 L.Ed.2d 547 (1983) ("A summary disposition affirms only the judgment of the court below, and no more may be read into our action than was essential to sustain that judgment."); *Illinois Election Bd. v. Socialist Workers Party,* 440 U.S. 173, 182–83, 99 S.Ct. 983, 989, 59 L.Ed.2d 230 (1979). We have specifically disapproved of *National Motor Freight's* "substantial impact" analysis, moreover, because of the Supreme Court's command in *Vermont Yankee Nuclear Power Corp. v. NRDC,* 435 U.S. 519, 98 S.Ct. 1197, 55 L.Ed.2d 460 (1978), to avoid engrafting additional procedures on agency action beyond those required by the APA. *See Cabais v. Egger,* 690 F.2d 234, 237 (D.C.Cir. 1982) ("Simply because agency action has substantial impact does not mean it is subject to notice and comment if it is otherwise

expressly exempt under the APA.").[3]

It might be thought that there is something vaguely underhanded about an agency publishing important rules without an opportunity for those affected to comment. And lawyers and judges tend to prefer, on the margin, added procedure. But as *Cabais* makes clear, we have been admonished somewhat dramatically by *Vermont Yankee* to not add more procedure to the APA than Congress required. I am afraid the majority opinion by obliterating the distinction between substance and procedure in section 553 does just that.

---

**3.** Even if *National Motor Freight* were still good law and binding on us, our case is arguably distinguishable because the only issue before us is the specific content of FAA adjudicative procedures and not whether such a remedial avenue exists at all. In *National Motor Freight*, freight carriers challenged an ICC plan of administrative adjudication of alleged carrier overcharges. Congress had explicitly authorized only judicial remedies to recover excessive rates. In the absence of such authority, the district court concluded that the right to an administrative route to reparations itself was a significant determination by the Commission that granted shippers an easier path to recover excess payments. *See National Motor Freight*, 268 F.Supp. at 95–96. Thus, the court decided that the provision of a *new remedy* was a new right or interest afforded to shippers. In contrast, Congress specifically empowered the FAA to adopt rules to adjudicate civil penalties. *See* 49 U.S.C. app. § 1475(d)(1). After *National Motor Freight*, the courts that adopted the "substantial impact" reasoning found the requisite impact when the agency created *new* rights and obligations. *See British Caledonian Airways, Ltd. v. CAB*, 584 F.2d 982, 989 (D.C.Cir.1978).